ELEANOR CASSAMASSE, administratrix, & another[1] vs.
J.G. LAMOTTE & SON, INC.
(and a companion case[2]).

Hampden.   September 12, 1983. — March 1, 1984.

Present: WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

Evidence, Relating to deliberation by jurors. Jury and Jurors. Practice,
Civil, Verdict, Interrogation of jurors, New trial, Appeal.

Affidavits of counsel in a civil action, which related hearsay statements
from an unidentified source and which were conclusory in nature, fell
short of demonstrating the need for a judicially supervised interroga-
tion of the jurors with respect to an alleged clerical error in the trans-
mission of their special verdicts. [317-319]
The question of the sufficiency of the evidence in a wrongful death action
to warrant the jury's finding that the decedent had assumed the risk of
being harmed was not preserved for consideration on appeal. [320]


CIVIL ACTION commenced in the Superior Court on May
6, 1975.

The case was tried before Griffin, J., and posttrial motions
were heard by her.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

John J. Egan for the plaintiffs.
William G. White for Daniel O'Connell's Sons, Inc.
Frederick S. Pillsbury for J.G. Lamotte & Son, Inc.

O'CONNOR, J.   Angelo J. Cassamasse (Cassamasse) was
killed on May 8, 1973, when he was struck on the head by a
steel pipe that employees of the defendant J.G. Lamotte &
Son, Inc. (Lamotte), were lowering into the basement of a

---

[1] Michael A. Cassamasse.

[2] Eleanor Cassamasse, administratrix, vs. Daniel O'Connell's Sons, Inc.,
& others.

building on a construction site at Holyoke Community College. Lamotte was the heating, ventilating, and air conditioning subcontractor on the project, and Cassamasse was acting in the course of his employment by Lamotte when the accident occurred. The defendant Daniel O'Connell's Sons, Inc. (O'Connell), was the general contractor.

The two cases were tried together and are before us on appeal. In one case, the plaintiff Eleanor Cassamasse, as administratrix of the estate of Cassamasse, who was her husband, seeks to recover damages from Lamotte for Cassamasse's wrongful death. The complaint alleges that the action was brought solely for the benefit of Cassamasse's plaintiff son Michael who, as an emancipated adult, had no rights to any benefits under the Workmen's Compensation Act, G. L. c. 152. It appears from the complaint that Michael is also a plaintiff seeking recovery on his own behalf. In the other action, Eleanor Cassamasse, as administratrix of the estate, seeks to recover from O'Connell for Cassamasse's conscious suffering and wrongful death. That action was brought for the benefit of Eleanor Cassamasse, as Cassamasse's spouse, and for the benefit of Cassamasse's children.

The jury returned special verdicts in response to questions submitted by the judge. The jury found that Cassamasse's injuries and death were proximately caused by the negligence of the defendants and that Cassamasse was not negligent. They also answered "Yes" to the question, "Did Mr. Cassamasse voluntarily assume the risk of being injured on the Holyoke Community College construction site?" The jury assessed damages in each case. The court entered judgments for the defendants because of the jury's verdict that the plaintiff assumed the risk of injury.[3] Thereafter, the plaintiffs in both cases moved for a new trial on the grounds that the special verdicts on the issue of assumption of the risk were against the weight of the evidence, were contrary

---

[3] Cassamasse's injury and death occurred before the effective date of St. 1973, c. 1123, which amended G. L. c. 231, § 85, and abolished assumption of the risk as a defense to causes of action arising on and after January 1, 1974.

to law, and were "the product of mistake, inadvertence and/ or misdirection on the part of one or more members of the jury." The plaintiffs also moved that the court provide for the questioning of one or more of the jurors. All the motions were denied. The plaintiffs appealed, asserting that the denial of their motions was prejudicial error. The Appeals Court consolidated the cases and we transferred the appeal here on our own motion. We affirm the judgments that were entered in the Superior Court.[4]

First, we consider the plaintiffs' motions for the questioning of jurors. The motions were grounded on assertions set forth in affidavits of the plaintiffs' counsel. Counsel swore that "it [had] come to [his] attention, by way of unsolicited information, that the answers to one or more of the special questions submitted to the jury were arrived at by mistake, error, inadvertence or misdirection on the part of one or more members of the jury, and as a result of said mistake, error, inadvertence or misdirection, the answers rendered and returned to the court by the foreman of the jury, were not as they were intended to be rendered and returned." The affidavits further stated that the error or mistake was not realized on the part of one or more members of the jury until after the jury was dismissed by the judge, and that "said mistake, error, inadvertence or misdirection did constitute an extraneous matter which caused the deliberations of the jury to be improperly reported in their special verdict, and that this matter required being brought to the attention of the court."

Juror testimony concerning the mental processes of jurors during deliberations, such as testimony that the jurors did

---

[4] Lamotte moved for summary judgment before trial, and for directed verdicts after the plaintiffs' opening, at the close of the plaintiffs' case, and at the close of all the evidence. The motions were based on the alleged insufficiency of evidence of negligence, on the argument that the plaintiffs' claims were barred by the fellow servant rule, and on the further argument that the plaintiffs were not entitled to recover because Cassamasse's injuries concededly arose out of, and in the course of, his employment by Lamotte, which was insured under G. L. c. 152. These motions were denied and Lamotte cross appealed. We do not consider the cross appeal because of our affirmance of the judgment for Lamotte on the plaintiffs' appeal.

not follow the judge's instructions, or that they misunderstood the legal consequences of their verdict, or that they were influenced by matters not in evidence, is not permitted to impeach a verdict. *Commonwealth* v. *Fidler*, 377 Mass. 192, 195-198 (1979). *Shears* v. *Metropolitan Transit Auth.*, 324 Mass. 358, 361-362 (1949). *Woodward* v. *Leavitt*, 107 Mass. 453, 460 (1871). However, juror testimony is permitted to show the *existence* of extraneous influences which, judged by their probable effect on a hypothetical jury, may have prejudiced a party, *Commonwealth* v. *Fidler, supra* at 196-201, and juror testimony is permitted to show that due to a reporting error the reported verdict was other than the verdict agreed on. *Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352, 386-388 (1912). *Capen* v. *Stoughton*, 16 Gray 364, 367 (1860). The plaintiffs contend that the judge erroneously denied them the right to present juror testimony about the occurrence of a mistake in reporting to the court one or more of the special verdicts.

We disagree with the plaintiffs' contention because we think that the plaintiffs failed to give the judge sufficiently clear, detailed, and reliable information to establish their right to present juror testimony. The plaintiffs assert that their counsel's affidavits were sufficient for this purpose, and that they could not have obtained better information for transmittal to the judge without exceeding the limitations on postverdict investigations that were imposed by this court in *Commonwealth* v. *Fidler, supra*. In *Fidler* we announced that postverdict interviews of jurors should take place under the supervision of the judge. We declined to permit unrestricted, unsupervised interviews by counsel or litigants. *Id.* at 202. However, we also stated: "If counsel or litigants without solicitation obtain information suggesting that 'extraneous matters' were brought into the jury deliberations, counsel may investigate to determine whether there is matter requiring the attention of the judge. If counsel thinks it warranted, counsel should bring the information to the judge by affidavit, if possible." *Id.* at 203. Since the judge must have sufficient information to recognize that his

or her attention is required and that a supervised postverdict inquiry is appropriate, counsel must supply that information, and counsel necessarily, therefore, has the right to conduct enough of an unsupervised investigation to obtain the information that is required. The rule applies when a litigant's or counsel's unsolicited information suggests that extraneous matters were brought into the jury deliberations, as in *Fidler,* and it applies as well when the information suggests a clerical error in the transmission of a verdict, as is asserted here.

The affidavit in this case was not that of a juror but was the affidavit of plaintiffs' counsel. The affidavit contained only hearsay statements from an unidentified source and was largely conclusory. Also, the affidavit states that "the answers to one or more of the special questions . . . were arrived at by mistake, error, inadvertence or misdirection . . . and as a result . . . the answers rendered and returned to the court . . . were not as they were intended to be rendered and returned." The affidavit neither identifies a particular answer or answers, nor what the mistake was. By stating that answers "were arrived at by mistake" the affidavit may fairly be interpreted to mean that there was error in the mental processes of the jurors during deliberations. Juror testimony as to that subject would be impermissible. The subsequent statement in the affidavit, that "as a result" the answers that were made to the court were not the jurors' intended answers, was not a clear representation that the error asserted by the undisclosed source was in reporting the verdict rather than in arriving at it. After a careful review of the entire affidavit and the record, we are satisfied that the information brought to the judge's attention fell short of demonstrating the need for a supervised interview of one or more jurors.[5]

---

[5] In their brief the plaintiffs state, without substantiation in the record, that following the discharge of the jury an account of the trial appeared in a Springfield newspaper stating that the plaintiffs were barred from recovery because the jury had found that Angelo Cassamasse had assumed the risk of his injuries. "Thereafter, plaintiffs' counsel was contacted by

The second issue sought to be raised by the plaintiffs' appeal is whether the jury were warranted in finding that Cassamasse assumed the risk of his injury. They contend on appeal only that the evidence was legally insufficient to support that finding. The plaintiffs raised that issue for the first time in support of their motion for a new trial. "[A] party cannot as matter of right raise a question of law on a motion to set aside the verdict and grant a new trial, which might have been raised before verdict. While a judge may in his discretion permit such a question to be presented on a motion for a new trial, he cannot be required to consider it." *Hathaway* v. *Checker Taxi Co.*, 321 Mass. 406, 412 (1947), quoting from *Lonergan* v. *American Ry. Express Co.*, 250 Mass. 30, 38 (1924). The record does not indicate whether the judge considered the sufficiency of evidence question presented by the motion for a new trial before denying the motion. Since the judge was not required to consider it, the record does not show any error in the denial of the motion.

If we treat the plaintiffs' appeal from the denial of their motion for a new trial as encompassing an effective appeal from the underlying judgment, *Forte* v. *Muzi Motors, Inc.*, 5 Mass. App. Ct. 700, 701 n.4 (1977), the plaintiffs fare no better. Since the question of the sufficiency of the evidence to warrant a finding that Cassamasse assumed the risk of injury was not raised at trial, that issue was not preserved for appeal. Mass. R. Civ. P. 46, 365 Mass. 811 (1974). Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

*Judgments affirmed.*

---

telephone by a member of the jury who stated to plaintiffs' counsel that he had seen the newspaper account and that the answers to the special questions as they were returned to the court by the foreman and reported in the newspaper account, were not as they were intended to be returned by the jury, and that the jury had fully intended to find for the plaintiffs in the amount of $150,000." Our decision would not be different if we were to consider these facts, which suggest, at least, that the mistake or misunderstanding, referred to by the juror, related not to clerical error but to the legal effect of the finding that Angelo Cassamasse assumed the risk of his injury.