Commonwealth *v*. Dixon.

COMMONWEALTH *vs*. CHARLES P. DIXON.

No. 87-1312.

Middlesex. March 18, 1988. — April 22, 1988.

Present: KASS, KAPLAN, & WARNER, JJ.

*Evidence,* Relating to deliberation by jurors. *Jury and Jurors. Practice, Criminal,* Deliberation of jury, Interrogation of jurors.

The judge who had presided at a criminal trial acted within his discretion in
    concluding, after a postverdict examination of one of the jurors, that
    the defendant had not sustained his burden of making "a colorable show-
    ing that an extrinsic influence may have had an impact on the jury's
    impartiality" so as to warrant deposition of the other jurors, where there
    was no demonstration that the content of certain alleged conversations,
    involving the husband of one of the jurors, had ever been brought to
    the attention of the jury. [680-681]

INDICTMENTS found and returned in the Superior Court De-
partment on August 30, 1982.

The cases were tried before *John Paul Sullivan,* J., and
motions for a new trial and for a postverdict inquiry of the
jurors were heard by him.

After remand by the Supreme Judicial Court, 395 Mass.
149 (1985), further proceedings were had before *Sullivan,* J.

*Jane Larmon White,* Committee for Public Counsel Services
(*Nona E. Walker,* Committee for Public Counsel Services,
with her) for the defendant.

*Rosemary D. Mellor,* Assistant District Attorney, for the
Commonwealth.

KAPLAN, J. This appeal follows upon *Commonwealth* v.
*Dixon,* 395 Mass. 149 (1985), from which we may learn the
following. On February 14, 1983, the defendant Dixon was
found guilty by a Middlesex jury of the crimes listed in the

margin.[1] On February 16, 1983, the defendant's attorney returned an unsolicited telephone call from Ken Loomis, a juror who served in the case. Over the phone Loomis expressed some disgruntlement with the way the jury deliberations had been conducted.[2] Among other remarks, was this, in substance: Loomis stated that "a female juror's husband had conversations with some of the witnesses in this case during the course of the trial and these conversations were made known to said female juror." The attorney might have questioned Loomis about his statement within the nice bounds of propriety set by *Commonwealth* v. *Fidler*, 377 Mass. 192, 201-204 (1979). He did not do so. On March 3, 1983 the attorney filed a motion for a postverdict inquiry of the jury, accompanied by his affidavit in which he set out Loomis's remarks including the statement quoted above. After argument on the motion, the trial judge denied it on the view that the defendant had made no "significant" or "considerable" showing that extraneous information had reached the jury which might have compromised their impartiality. The judge's order denying postverdict inquiry was affirmed by our court as an incident of our affirmance of the judgments of conviction. *Commonwealth* v. *Dixon*, 18 Mass. App. Ct. 1107 (1984).

The Supreme Judicial Court granted the defendant's application for further appellate review and remanded the case to the trial judge for further inquiry of Loomis "for the purpose of fleshing out the affidavit." 395 Mass. at 153. The court acted on the scruple that something might appear tending to show that the content of the conversations was "extraneous" to the trial proper and such as possibly to distort a jury's deliberations if it reached any juror or all of them — and here Loomis alleged that the female juror had received it; possibly, too, the content was known to Loomis and might even have figured in the deliberations of the entire jury. Thus there should be further

---

[1] The jury convicted the defendant of two counts of mayhem, two counts of kidnapping, one count of aggravated rape, and two counts of assault and battery with a dangerous weapon.

[2] For details, see note 6, *infra*.

inquiry of Loomis which might show a need for still further proceedings.[3]

Upon remand the course followed was to depose Loomis (June 13, 1986), defense counsel taking him on direct examination and the prosecutor cross-examining (very briefly). Loomis said he had telephoned "to express some concerns with the proceedings in the deliberations," and that he had a "present memory" of those concerns. One of the concerns was that the female foreperson seemed to "steer" the discussion toward a decision of guilty.[4] Loomis remembered, but not very distinctly, about the husband of the foreperson — but it may have been another female juror — sitting in the audience and either overhearing or having "some conversation with someone that knew something about the trial"; he assumed it was with someone with some interest in the case or a "party" to it, not just a spectator. The information that there was such conversation, said Loomis, "had to have come up in the deliberations," but he did not remember how; the juror involved had mentioned the conversation and told its content, but he did not recall the content. Loomis said nothing was "discussed" in the jury deliberations that "was not part of the evidence taken in the courtroom," nor was there any "information . . . during the course of the deliberation, which concerned matters that were not raised in the courtroom."

On the basis of the deposition, the defense moved for an order allowing depositions of all the jurors. This the judge denied, filing findings of fact and conclusions of law. He held,

---

[3] "The judge may conduct the interview of the juror, or, in the alternative, in these limited circumstances, he may give defense counsel the opportunity to interview the juror for the purpose of fleshing out the affidavit. . . . Defense counsel may then make a new affidavit. If sufficient facts emerge, the judge should then conduct whatever further proceedings may be required." 395 Mass. at 153.

[4] Of course such details of the ebb and flow of internal jury discussions could not be availed of to impeach a verdict; indeed a juror could not properly testify concerning them. See *Woodward* v. *Leavitt,* 107 Mass. 453, 460-461 (1871); *Fidler,* 377 Mass. at 196, 199. The contrast is with extraneous matter intruding a disturbing influence on the jury, which, within limits, may be testified to by jurors.

in effect, that there had not been "a colorable showing that an extrinsic influence may have had an impact upon the jury's impartiality" (*Dixon*, 395 Mass. at 152), a "something more than mere speculation" (*ibid.*, quoting from *United States* v. *Barshov*, 733 F.2d 842, 851 [11th Cir. 1984], cert. denied, 469 U.S. 1158 [1985]).

Whether such a showing has been made "is properly addressed to the discretion of the trial judge" (395 Mass. at 152), although discretion may be so far exceeded as to encompass an error of law (*ibid.*). We think that has not occurred, and we shall affirm the judge's order.[5]

The matter may be restated in somewhat more stringent terms thus. In the end, to impeach the verdicts the defendant would have the burden of showing that extraneous information was brought to the consciousness of the actual jury which would have exerted a disturbing influence on "a hypothetical average jury" in reaching a verdict. See *Fidler*, 377 Mass. at 201; *Cassamasse* v. *J. L. Lamotte & Son*, 391 Mass. 315, 318 (1984). Loomis's deposition made no progress, no colorable demonstration, on this line. If we care to assume, over some odds, that a conversation was mentioned in the jury room, we do not know its content, and so cannot say that it would, or how it would, affect the hypothesized jury. In this sense, we need not put any weight on Loomis's (reassuring) testimony, in effect, that the conversation, although mentioned, did not enter into the deliberations of the jury which yielded the verdicts.[6]

---

[5] The order appealed from prohibits further inquiries of the jurors, but the defendant's brief ends with a prayer for a new trial. Our affirmance of the judge's order can be taken to dispose a fortiori of the prayer.

[6] The record leaves us, as it may well have left the trial judge, with a sense that Loomis's reference to a husband's conversations was an indistinct part of the uneasiness so often felt by jurors who realize after the event what doom the verdict visits upon the now familiar person who sat at the counsel table. In his remarks to counsel Loomis said he acquiesced in the verdicts because of pressure from the other jurors and the lateness of the hour; some jurors indicated they reached conclusions of guilt before jury deliberations began; one juror wasn't allowed to voice her opinion because she was "different." Again in his deposition Loomis began with the grievance that the foreperson was steering the discussion toward guilt.

If by any chance it were held that the defendant carried the burden described, it would still be open to the Commonwealth to show lack of prejudice to the defendant in the particular case, and this could take the form of a showing of overwhelming evidence of his guilt. See *Fidler*, 377 Mass. at 201 n.8. Evidently we have a case here where the defendant's crimes (for which the word "heinous" would be an understatement) were proved overwhelmingly, in considerable part by evidence furnished by the defendant himself.

Plausible suggestions of improper influence upon jurors deserve due inquiry, and that has now been provided here. To carry the empty investigation still further would be quixotic and, if accepted as a precedent, would threaten unwisely the stability of jury verdicts.

*Order affirmed.*