COMMONWEALTH *vs.* DANIEL SOLIS.

Suffolk. February 7, 1990. - May 15, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Deliberation of jury, Interrogation of jurors, New trial. *Evidence,* Relating to deliberation by jurors. *Supreme Judicial Court,* Rule making.

A criminal defense counsel's unauthorized postverdict questioning of a juror concerning certain court officers subjecting the jury to extraneous influences that might have prejudiced the defendant did not, in the circumstances presented on the defendant's motion for a new trial, require the adoption of an exclusionary rule that would have suppressed the evidence of the court officers' improprieties in dealing with the jury. [401-402]

In considering a motion for a new trial of a criminal case, the judge was warranted in concluding that the Commonwealth had failed to prove beyond a reasonable doubt that the defendant was not prejudiced by certain extraneous remarks made to the jury by one or more court officers. [402]

Statement of this court's intention to undertake consideration of whether to adopt a disciplinary rule that will incorporate the restrictions on postverdict interviews with jurors set forth in *Commonwealth* v. *Fidler,* 377 Mass. 192 (1979). [402-404]

INDICTMENT found and returned in the Superior Court Department on March 15, 1985.

The case was tried before *Guy Volterra,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Willie J. Davis* for the defendant.

*Julie W. Heflin,* Assistant District Attorney (*David Mark,* Assistant District Attorney, with her) for the Commonwealth.

*Arnold R. Rosenfeld & Brownlow M. Speer*, for Committee for Public Counsel Services, *& Marjorie Heins* for Massachusetts Civil Liberties Union Foundation, amici curiae, submitted a brief.

WILKINS, J. A judge of the Superior Court granted the defendant a new trial because statements made to the jury by one or more court officers subjected the jury to extraneous influences that might have prejudiced the defendant. Defense counsel learned of the court officers' statements through postverdict questioning of a juror that was not authorized by a judge. Counsel's conduct was inconsistent with principles for postverdict interrogation of jurors set forth in *Commonwealth v. Fidler*, 377 Mass. 192, 201-204 (1979), but was not in violation of the Massachusetts Code of Professional Responsibility. See S.J.C. Rule 3:07, Canon 7, DR 7-108 (D), 382 Mass. 792 (1981). See also *United States v. Kepreos*, 759 F.2d 961, 967-968 & n.5 (1st Cir. 1985) (adopting requirement of judicial supervision of postverdict interviews with jurors).

We reject the Commonwealth's claim that the evidence of extraneous influences was inadmissible because it was obtained in violation of principles announced in the *Fidler* opinion.[1] We also reject the Commonwealth's assertion that the defendant clearly was not prejudiced by the court officers' statements to the jury. We, therefore, affirm the order granting a new trial.

On January 30, 1989, a jury in Suffolk County found the defendant guilty of indecent assault and battery on a child under the age of fourteen and not guilty of rape of a child. We recite the relevant facts found by the judge, following a hearing on February 7, 1989, on the defendant's motion for a new trial. After the defendant was sentenced, defense counsel waited near the public elevators on the eighth floor of the

---

[1]The Commonwealth rightly concedes that the conduct of the court officers was improper. See *Commonwealth v. Donovan*, 15 Mass. App. Ct. 269, 272 (1983).

courthouse to speak with one or more jurors.[2] About thirty minutes later, a juror named Cook approached the elevators and spoke with defense counsel for about thirty minutes. Cook explained the jury's reasons for finding the defendant not guilty of one charge and guilty of the other. They discussed various other aspects of the case, particularly the jury's reasoning processes.

Cook also explained that, during the jury's deliberations, they had not been certain as to the victim's testimony. Based on Cook's later testimony, and that of the jury's foreman, the judge found that the foreman had summoned a court officer and had asked if it were possible to obtain a transcript of the child's testimony. The court officer replied that it was not and that the jury should use their collective memory of the evidence to resolve any conflict.

Cook and the jury foreman described a further communication between the jury and a court officer that occurred about 11 A.M. on the day the verdicts were returned. The foreman requested that the verdict of not guilty on the rape charge be recorded and that the judge be told that the jury were "pretty deadlocked" on the second verdict. The court officer replied that the jury had been deliberating only for four or five hours; that they should try to reach a verdict by 4 P.M. when the judge would send them home for the night; that, if there were no verdict on that day, they would be asked to return on the following day (a Tuesday); and that the judge would not be informed of the deadlock until Wednesday or Thursday. About two hours later the jury returned their verdicts.

The judge concluded that the verdict of guilty should not stand and granted the defendant's motion for a new trial. The judge ruled that, by not bringing the request for a transcript to his attention, a court officer usurped the court's au-

---

[2]In a lobby conference, held two days later, defense counsel said that in Suffolk County postverdict talks with jurors were a frequent occurrence, "[T]o seek feedback as to how they evaluate evidence and what some of the mental processes [were?], so we can learn and grow as practitioners. . . . [I]ndeed I've spoken to, I don't know, a dozen or more jurors."

thority. The judge granted that he probably would have denied the request because of the difficulty in obtaining the transcript promptly. He concluded, however, that the defendant was improperly denied the opportunity both to have a judge evaluate the request and to suggest a proper response to that request.

The judge further ruled that a court officer usurped the court's authority to communicate with the jury on the record concerning their inability to reach a verdict. Citing *Commonwealth* v. *Rodriguez*, 364 Mass. 87, 99 (1973), the judge noted that it is important that whatever is said in such circumstances have no coercive tendency. He concluded that the average juror could well have interpreted the court officer's remarks as requiring several days of additional deliberations before the jury might be discharged, unless, of course, they were to come to a verdict on both indictments.

The judge ruled that the defendant had shown that extraneous matter was introduced to the jury, that the burden then shifted to the Commonwealth to show beyond a reasonable doubt that the defendant was not prejudiced by that extraneous matter (see *Commonwealth* v. *Fidler, supra* at 201), and that the Commonwealth had failed to meet that burden.

1. There is no sound reason to adopt an exclusionary rule that would suppress the evidence of the court officers' improprieties in dealing with the jury. Defense counsel did not violate a constitutional provision, or even the code that this court has established to guide the professional conduct of attorneys. The wrong was not so great as to warrant the harsh consequences of suppression.

The deterrent effect of an exclusionary rule is not needed in circumstances like these, moreover, because the court can create sufficient deterrence by fashioning a disciplinary rule regulating postverdict jury contact. Such a rule would have practical teeth, unlike the more problematic prospect of establishing tort liability against a police officer who conducts

an unlawful search.[3] A rule excluding relevant evidence, beneficial to a defendant and obtained through no wrongdoing by the defendant, would raise questions of fair trial and due process. Once such evidence is acquired, the defendant should not be denied its use because of his counsel's error. See *Commonwealth* v. *Smith*, 403 Mass. 489, 493 (1988). Although there is a refreshing novelty to the Commonwealth's advocacy of the beneficial, deterrent effect of an exclusionary rule, this case does not present a need for such a rule.

2. The judge was warranted in ruling that the Commonwealth had failed to prove beyond a reasonable doubt that the defendant was not prejudiced by the court officers' extraneous remarks. It is sufficient to note that an average juror might well be pressured into promptly agreeing to a verdict, when, on a Monday morning, he or she is advised that the judge will not even be told of the jury's deadlock until Wednesday or Thursday. Certainly the judge was not obliged to find beyond a reasonable doubt that the defendant was not prejudiced by that event.

3. This is not the occasion for fashioning a disciplinary rule concerning the limits of postverdict questioning of jurors. See *Miller* v. *United States*, 403 F.2d 77, 81 (2d Cir. 1968). Normal procedures for the publishing of a proposed court rule for comment should be followed. We do wish, however, to comment about the nature of any such disciplinary rule.

The *Fidler* opinion and our subsequent opinions concerning postverdict interviews with jurors have not discussed the interrelationship between the principles expressed in those opinions and the Code of Professional Responsibility. See *Commonwealth* v. *Dixon*, 395 Mass. 149 (1985); *Cassamasse* v. *J.G. Lamotte & Son*, 391 Mass. 315 (1984). Certainly there is a difference. The Code provides in S.J.C. Rule 3:07, DR 7-108 (D), that, "[a]fter discharge of the jury from further consideration of a case with which the lawyer was

---

[3]We shall return to the subject of a rule of court later in this opinion.

connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service." The implication of DR 7-108 (D) is that a lawyer properly may initiate a conversation with a discharged juror. See A.B.A. Code of Professional Responsibility and Canons of Judicial Ethics, Ethical Consideration 7-29 (1970) ("[a]fter the trial, communication by a lawyer with jurors is permitted so long as he refrains from asking questions or making comments that tend to harass or embarrass the juror or to influence action of the juror in future cases"). See also *Elisovsky* v. *State,* 592 P.2d 1221, 1229 (Alaska 1979); *State* v. *Blocker,* 211 Kan. 185, 197-. 198 (1973); *Matter of Delgado,* 279 S.C. 293, 296-297 (1983), cert. denied, 464 U.S. 1057 (1984). There was no evidence to support a conclusion that defense counsel violated DR 7-108 (D).

We shall undertake consideration of whether to adopt a disciplinary rule that will incorporate the restrictions on postverdict interviews with jurors set forth in the *Fidler* opinion. We recognize that the restrictions of the *Fidler* rule are more rigorous than those generally in effect elsewhere in the country. We are not inclined to abandon the restrictions for that reason. We continue to believe that lawyer-initiated, postverdict juror contact not authorized by a judge should not be allowed. A practice of questioning jurors could discourage people from being willing to serve. Questioning of jurors, in any circumstance, concerning the jury's deliberative processes should not be permitted. Such an inquiry would intrude improperly into the jury's function and, in any event, would produce evidence that would not be admissible to challenge the verdict. *Commonwealth* v. *Martell, ante* 288, 294-295 (1990). *Commonwealth* v. *Fidler, supra* at 196, 199. *Woodward* v. *Leavitt,* 107 Mass. 453, 460-461 (1871). *Commonwealth* v. *Dixon,* 25 Mass. App. Ct. 678, 680 n.4 (1988). See *Elisovsky* v. *State, supra* ("Inquiry should not be made into subjects about which a juror may not testify"). We are unimpressed with the argument that

questioning of jurors should be allowed to assist lawyers in improving their trial techniques. See *Matter of Delgado, supra* ("The argument that counsel wishes to talk to a juror in an effort to improve his trial skills is more often an excuse and not a good reason").

The negative aspect of a rule as restrictive as that set forth in the *Fidler* opinion is that there will be no process, within the defendant's control, by which the defendant can seek to discover whether there were extraneous influences on the jury, such as inappropriate and potentially prejudicial comments by a court officer. Alleged improprieties may, of course, be disclosed by a concerned juror. See *Commonwealth* v. *Dixon*, 395 Mass. 149, 150 (1985) (juror called defense lawyer concerning alleged extraneous influences); *Commonwealth* v. *Hunt*, 392 Mass. 28, 37-38 (1984) (same); *Commonwealth* v. *Fidler*, *supra* at 194 (juror came to defense lawyer on advice of American Civil Liberties Union). The defendant, however, must let the information come to him. When this court proposes the form of the new rule, some may wish to comment on why an absolute restriction is not appropriate. There will also be a question whether we can put into the form of a satisfactory disciplinary rule the restrictions on what a lawyer may do "within the nice bounds of propriety set by *Commonwealth* v. *Fidler*" (*Commonwealth* v. *Dixon*, 25 Mass. App. Ct. 678, 679 [1988]), once the lawyer learns of a possible extraneous influence on the jury. *Commonwealth* v. *Fidler*, *supra* at 203. Under such a rule, judges should be receptive to conducting an inquiry, once the defendant demonstrates a basis for suspicion. The proper administration of procedures concerning deliberating juries should be a matter of primary concern of trial judges.

*Order granting a new*
*trial affirmed.*