COMMONWEALTH *VS.* JOHN W. BRESNAHAN.

No. 07-P-1927.

Nantucket. March 1, 2011. - April 27, 2011.

Present: GRASSO, GRAHAM, & HANLON, JJ.

Further appellate review granted, 460 Mass. 1105 (2011).

*Jury and Jurors. Evidence,* Relating to deliberation by jurors. *Practice, Criminal,* Deliberation of jury.

A District Court judge hearing a criminal defendant's motion for a new trial, in which the defendant claimed extraneous jury influence, erred in engaging in a postverdict examination of the jurors prematurely and without affording the Commonwealth the opportunity to explore whether the defendant's claim was orchestrated by a surrogate acting on behalf of the defendant; therefore, this court vacated the judge's order allowing the defendant's motion for a new trial and remanded the matter for further proceedings. [360-364]

COMPLAINT received and sworn to in the Nantucket Division of the District Court Department on November 8, 2005.

The case was tried before *Joseph I. Macy*, J., and following a stay of appeal to allow for postverdict jury inquiry, a motion for a new trial, filed on July 17, 2008, was heard by *Robert V. Greco*, J.

*Thomas G. Shack, III*, Assistant District Attorney, for the Commonwealth.

*Russell Fuller* for the defendant.

GRASSO, J. The convoluted proceedings that underlie this appeal exemplify the pitfalls of engaging in a postverdict inquiry of jurors without first carefully applying the principles set forth in *Commonwealth* v. *Fidler*, 377 Mass. 192 (1979), and its progeny. Because the motion judge engaged in a postverdict examination of jurors prematurely and without affording the Commonwealth the opportunity to explore whether the defendant's claim of an extraneous jury influence was orchestrated by a surrogate acting on behalf of the defendant, we vacate the order

allowing the defendant's motion for a new trial and remand for further proceedings.

1. *Background.* On December 5, 2006, the defendant was tried before a jury of six in the Nantucket Division of the District Court Department on the charge of operating a motor vehicle while under the influence of intoxicating liquor. The trial judge instructed the jury at approximately 4:15 P.M., and the jury commenced deliberations at 4:20 P.M. At 5:50 P.M., the jury returned a verdict of guilty. Based on the defendant's extensive record of convictions, the judge sentenced him to two and one-half years in the house of correction.

In February of 2007, the defendant appealed from his conviction represented by new counsel, Terence McGinty. McGinty represented the defendant until February of 2008, when Attorney Russell Fuller succeeded him.

2. *The defendant's motion for postverdict juror inquiry.* On March 7, 2008, Fuller filed a motion for a postverdict juror inquiry, alleging that the jury were exposed to an extraneous influence because the trial judge entered the jury deliberation room and told the jury, ex parte, that they were not leaving until they reached a verdict and that they should go with the group's consensus.[1] Among the materials supporting the motion was an affidavit from prior appellate counsel McGinty that detailed a series of communications between the defendant's landlord, a juror, and McGinty himself.

a. *The McGinty affidavit.* McGinty's affidavit related that approximately one year after the trial, a woman identifying herself as Barbara Constantine and claiming to be the defendant's former landlord telephoned McGinty and stated that a juror named Mary Dodd[2] was upset about the jury's deliberations and wanted to talk to someone. A few days later, Constantine again telephoned McGinty and stated that she had again spoken to Dodd, who had given Constantine her telephone number to pass along to McGinty.

---

[1] Prior to filing the motion, the defendant moved in this court to stay his appeal and for leave to file a motion for postverdict juror inquiry. The defendant's motion was allowed. His appeal is currently stayed pending resolution of the Commonwealth's appeal from the allowance of the defendant's motion for a new trial.

[2] A pseudonym.

On December 5, 2007, McGinty telephoned the number provided. A woman identifying herself as Dodd told McGinty that she was a juror in the defendant's case and was upset because "there was no evidence" to support the conviction. Dodd told McGinty that she had wanted to have the defendant's medical records to assess the medical issues raised at trial. Dodd also told him that she had laughed at a police officer's assertion that he had stopped the defendant driving in the middle of the road because "everyone on Nantucket knows how narrow that street is." Dodd urged McGinty to go and measure the road.

Their first conversation ended when Dodd stated that she had other business to attend to. She indicated that she had more to say and would like to finish their conversation at a later date.

On December 11, 2007, McGinty again telephoned Dodd. On this occasion, Dodd told him that when she and another juror were holding out against conviction, the judge entered the jury deliberation room, said that he understood the jury were having trouble reaching a verdict, and declared, "You are not leaving here until you have reached a verdict," and admonished them to "go with the group consensus."

b. *Initial disposition of the defendant's motion.* On April 14, 2008, the defendant's motion came before a judge other than the trial judge, who had recused himself. The second judge summarily denied the motion, noting that the defendant's showing was predicated solely upon an affidavit of counsel and not that of the juror in question.

The defendant moved for reconsideration, supported by a further affidavit from McGinty, who asserted that he had not obtained an affidavit from Dodd because he had become aware of the constraints on juror contact imposed by *Commonwealth v. Fidler,* 377 Mass. at 203-204.[3] The judge allowed the defendant's motion for reconsideration, vacated his order denying the motion for postverdict juror inquiry, and recused himself from the case. A new judge was specially assigned to hear the case by the regional administrative office of the District Court.

[3]Although neither the defendant's motion for reconsideration nor McGinty's supplemental affidavit appears in the record, the substance of the affidavit is recounted in the transcript of a subsequent hearing before the judge who ultimately allowed the defendant's motion for a new trial.

c. *The initial nonevidentiary hearing.* On June 10, 2008, the matter came before the new judge for hearing. The prosecutor argued that before ordering a postverdict inquiry of the jurors, the judge should inquire into the circumstances surrounding the initial contacts by Barbara Constantine with Dodd and Mc-Ginty. In particular, the prosecutor maintained that there should be an affidavit from, or inquiry of, Constantine herself as to how she happened to contact Dodd and then reach out to McGinty.

The judge viewed the prosecutor's request as unnecessarily adding a third step to what was already a two-step process.[4] He rejected the Commonwealth's contention that inquiry of Constantine was necessary and ruled that the defendant had made a colorable claim of extraneous influence sufficient to merit postverdict inquiry of the jurors.

d. *The first evidentiary hearing.* On June 25, 2008, the judge conducted an inquiry of four of the six deliberating jurors, including Dodd.[5] In the course of the hearing, the prosecutor again expressed concern that the proper inquiry should be Constantine's initial contacts with Dodd and whether Constantine was acting as the defendant's agent in doing so. The prosecutor also requested that the judge hear testimony from the trial judge.

The judge denied the prosecutor's request to call the trial judge, but invited the trial judge to submit a written report of his recollection of events. On July 9, 2008, the trial judge filed that report. He related that the jury retired to deliberate at 4:20 P.M., that he remained in his lobby during deliberations, and that at 5:20 P.M. he was informed that the jury had a question. Shortly thereafter, and before he received a written question, he was informed that the jury had resolved its own question. The jury returned their verdict at 5:55 P.M. The trial judge was emphatic

---

[4]Pursuant to *Commonwealth* v. *Kincaid*, 444 Mass. 381, 386 (2005), a two-step procedure applies to a claim of extraneous influence on a jury. At the first step, the defendant "bears the burden of demonstrating that the jury were in fact exposed to" extraneous influence. *Ibid.*, quoting from *Commonwealth* v. *Fidler*, 377 Mass. at 201. If the defendant meets his burden, "the burden then shifts to the Commonwealth to show beyond a reasonable doubt that [the defendant] was not prejudiced by the extraneous matter." *Ibid.*, quoting from *Fidler*, *supra.*

[5]One of the jurors had since moved to Colorado. The one remaining juror testified at a later hearing as recounted *infra.*

that at no time prior to the verdict did he enter the jury deliberation room. He also noted that after the verdict was returned in open court, he thanked the jury and told them that he would meet with them later in the jury room in the event they had any questions.[6] After leaving the bench, he met with the jurors in the jury room and answered their questions. The only question he recalled specifically related to a juror asking what would have happened if they had not reached a verdict.

e. *The motion judge's findings and rulings.* On August 7, 2008, the motion judge issued his findings of fact and rulings of law. As to the manner in which Constantine, Dodd, and McGinty first interacted, the judge found that about one year after the defendant's trial, Dodd received a telephone call from Constantine, who identified herself as a friend of the defendant. Constantine asked Dodd, "Why did the jury take so long?" Dodd responded that she was not sure that she was supposed to answer questions like that. Constantine pursued the matter in two subsequent telephone calls to Dodd.

Some time between Constantine's first and last telephone call to Dodd, Constantine also telephoned McGinty, the defendant's then appellate counsel. Constantine identified herself as a friend and former landlord of the defendant and informed McGinty that a juror (Dodd) was upset about the way deliberations had gone and wanted to talk to someone about it. A week later, Constantine again telephoned McGinty and told him that she had again spoken to Dodd, who had given Constantine her telephone number so that McGinty could telephone her. McGinty then telephoned Dodd on two separate occasions and obtained the information that formed the basis of his affidavit.

As to whether the trial judge entered the jury room during deliberations and had ex parte communications with the jury, the motion judge did his best to reconcile the varied and differing recollections of Dodd and the three[7] other jurors. The motion judge found that "the trial judge did enter the jury room while the jurors were deliberating without the prosecuting attorney and defense being present and without their knowledge";

---

[6] The trial transcript corroborates the judge's recollection in this regard.

[7] One juror said that the judge never entered. Two said that he did, or may have, but that he said nothing of consequence.

and "the trial judge did not tell the jurors that they had to agree on a verdict, or that they should listen to the judgment of their peers and agree, or that they were not leaving until a verdict was reached."[8] As the motion judge saw it, the problem was not what the trial judge said in the jury room, but what he did not say. "The jurors were clearly given the impression that their options were to find the defendant guilty or find him not guilty . . . . The problem is that in the informal setting of the jury room, the jurors were not also advised that the 'verdict to which each juror agrees must of course be his or her own verdict, the result of his or her own convictions, and not merely an acquiescence in the conclusion of the other jurors . . . .'" The motion judge concluded that the defendant satisfied his burden of proving that the jury were exposed to an extraneous influence on account of the ex parte remarks of the trial judge during jury deliberation. See *Commonwealth* v. *Fidler*, 377 Mass. at 201.[9]

Proceeding to the second step of the procedure set forth in *Commonwealth* v. *Kincaid*, 444 Mass. 381, 386 (2005), the judge concluded that a new trial was required because the Commonwealth had not established beyond a reasonable doubt that the defendant was not prejudiced by the extraneous influence.

f. *The second evidentiary hearing.* The Commonwealth moved for reconsideration. As pertinent here, the Commonwealth argued that (1) the failure to permit inquiry into the basis of Constantine's contacts with juror Dodd rendered the defendant's initial showing and all that followed improper; (2) without hearing Constantine's testimony, it was not possible to adequately assess the relationship between her and the defendant; and (3) if Constantine was acting on behalf of the defendant in her contacts with Dodd, then the defendant's motion for postverdict jury inquiry should have failed without need for further inquiry of the jurors.

---

[8]The motion judge specifically discredited Dodd's testimony in that regard and noted that Dodd's "contact with, and lobbying by, Ms. Constantine created a bias that the other jurors did not have."

[9]The judge dismissed the Commonwealth's argument that because Constantine acted as the defendant's agent in making contact with Dodd, the information obtained from Dodd may not form the basis of an attack on the verdict, by observing that "the mere fact that Constantine and the defendant may have been friends would be insufficient to establish an agency relationship."

The motion judge allowed the Commonwealth's motion to the limited extent of "reopening testimony from [the trial judge] and others." On November 20, 2008, and December 16, 2008, the judge conducted further evidentiary hearings. The judge inquired of a fifth juror and heard testimony on direct and cross-examination from the trial judge, the prosecutor at the defendant's trial, several court officers, and the defendant himself.[10]

During cross-examination of the defendant, the judge precluded the prosecutor from inquiring into whether the defendant ever had any communication with Constantine regarding the case.[11] He also precluded the Commonwealth from calling Constantine as a witness to inquire into her relationship with the defendant and the basis of her repeated calls to Dodd.[12]

Following conclusion of this hearing, the judge entered additional findings in which he stated, "The additional evidence . . . does not undermine my prior findings; if anything, it lends support to those findings, particularly in view of the testimony of the fifth juror. . . . In crediting the accounts of the jurors, in large part I am rejecting evidence to the contrary

[10]The trial judge reiterated that he never entered the jury room during deliberations and only did so after the trial had concluded. The fifth juror corroborated the judge's account. He had no recollection of the trial judge entering the jury room during deliberations, but recalled that the judge entered after the verdict was delivered to thank the jurors for their service. One court officer testified that he was stationed outside of the jury deliberation room and the trial judge never entered during deliberations. Another testified that he did not see the judge enter the jury room during deliberations on that day or any other. A third testified that he remained in the lobby with the judge throughout the jury's deliberations and that the judge never left the lobby during that time.

[11]After the prosecutor asked the defendant, "Did you ever have any communication regarding the case with Ms. Constantine," the judge responded, "What's the relevance of this[?]" When the prosecutor responded that the question was directed to "the discussion that's taken place obviously with Ms. Constantine with regard to his case and his concern about this case," the judge observed, "You're just trying to get back into the question that you've been trying to get into that I indicated was not part of this hearing."

[12]When the prosecutor noted that Constantine was on the Commonwealth's witness list, the judge stated, "It's on your list, but that doesn't mean she was going to be allowed to testify. I made it very clear that what this hearing was going to be about. It was the witnesses who were in a position to observe what went on in the courtroom from the time the jury left this room to deliberate to the time of a verdict."

presented in the November and December hearings."[13] The judge ordered that his previous findings and rulings should stand.

3. *Discussion.* The rule governing postverdict inquiry of jurors reflects a tension between the desire to promote finality and confidence in jury verdicts and prevent harassment of jurors and jury tampering on the one hand, and the desire to ascertain that justice is done by an impartial jury on the other. See *Commonwealth* v. *Fidler, supra* at 195-197. Without a rule limiting postverdict contact of jurors there is real danger that "[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *McDonald* v. *Pless,* 238 U.S. 264, 267 (1915). At the same time, "an inflexible rule excluding all juror testimony offered to impeach verdicts achieves stability at the expense of doing justice between the parties — a result not consistent with the ideal of trial by an impartial jury." *Commonwealth* v. *Fidler, supra* at 197.

In recognition of this tension, *Fidler* establishes that postverdict inquiry of jurors by counsel, litigants, or their agents is permissible only in narrow circumstances and upon direction of the court:

> "We think the jury system is best protected by a rule requiring that any postverdict interviews of jurors by counsel, litigants, or their agents take place under the supervision and direction of the judge. We decline to permit unrestricted posttrial interviews, as we think such a practice would defeat the important interests protected by restrictions on the use of juror testimony to impeach verdicts."

*Id.* at 202. When counsel "*without solicitation* obtain information suggesting that 'extraneous matters' were brought into the jury deliberations, counsel may investigate to determine whether

---

[13]The judge's conclusion that the fifth juror's testimony supported the accounts of the two jurors other than Dodd who stated that the judge entered the jury room during deliberations overstates that testimony and lacks a factual basis in the record. As noted earlier, the fifth juror had no recollection of the trial judge entering the jury room during deliberations, but recalled only that the judge entered after the verdict was delivered to thank the jurors for their service. See note 10, *supra.*

there is matter requiring the attention of the judge" (emphasis added). *Id.* at 203. While alleged improprieties may be disclosed by a concerned juror, they may not be solicited, and the "defendant must let the information come to him." *Commonwealth* v. *Solis*, 407 Mass. 398, 404 (1990).

Cases in which postverdict inquiry is proper have been narrowly limited. *Commonwealth* v. *Semedo*, 456 Mass. 1, 22-23 (2010). Interrogation of jurors is not favored absent a showing of illegal or prejudicial intrusion into the jury process. See *Commonwealth* v. *Lynch*, 439 Mass. 532, 545 (2003). Such an inquiry should be initiated only if the judge finds "some suggestion that there were extraneous matters in the jury's deliberations." *Commonwealth* v. *Fidler, supra* at 203.

Here, the defendant's claim that the judge entered the jury room ex parte during deliberations and instructed the jury that they must return a verdict raises a serious question of extraneous influence sufficient to warrant judicial inquiry. See *Commonwealth* v. *Dixon*, 395 Mass. 149, 151-152 (1985). Indeed, such a claim of jury coercion would affect not only the defendant's right to a fair and impartial jury verdict, see *Commonwealth* v. *Guisti*, 434 Mass. 245, 251 (2001), but also his constitutional right to a public trial. See *Commonwealth* v. *Patry*, 48 Mass. App. Ct. 470, 474-475 (2000).

We turn then to the basis of the defendant's claim. A defendant's proffered showing of extraneous influence need not be too demanding. The defendant need only make a colorable showing that an extrinsic influence may have had an impact on the jury's impartiality. See *Commonwealth* v. *Dixon, supra*; *Commonwealth* v. *Guisti, supra*; *Commonwealth* v. *Philyaw*, 55 Mass. App. Ct. 730, 737-738 (2002). Nevertheless, implicit in *Fidler* and its progeny is the requirement that the defendant's showing may not *itself* be the tainted product of improper postverdict interrogation by the defendant or his agent. See *Commonwealth* v. *Fidler*, 377 Mass. at 202-204. While investigation or gathering of evidence is permitted, solicitation of jurors by the defendant or his counsel is not. See *ibid.* Nor may a defendant accomplish by means of a cat's paw the very solicitation of jurors that he is forbidden to accomplish directly. See *id.* at 204. To conclude otherwise would render illusory the protection afforded to jurors

by judge-initiated inquiry and subject jurors to the very harassment against which the rule is designed to protect.

The Commonwealth argues that the motion judge erred at the very outset, and then throughout the proceeding, by not permitting inquiry into whether Constantine's contacts with Dodd were at the behest of the defendant. We agree. The defendant's showing of extraneous influence set forth in the McGinty affidavit depended entirely on direct, unsupervised, and repeated contacts by Constantine, the defendant's friend and landlord, and McGinty, the defendant's first appellate counsel, with juror Dodd. A year after the trial, Constantine telephoned Dodd, with whom she had no prior relationship, to inquire "why the jury had taken so long." Rebuffed in her initial contact, Constantine telephoned Dodd on two successive occasions. While undertaking contacts with Dodd, Constantine also was telephoning McGinty, and encouraging him to contact Dodd directly. See *Commonwealth* v. *Solis*, 407 Mass. at 403-404 (postverdict questioning of juror not authorized by judge inconsistent with *Fidler* principles for postverdict interrogation).

How Constantine came to know that Dodd was a juror, why she contacted her, and whether she did so at the behest of the defendant remained thoroughly unexplored despite the prosecutor's repeated protests. Likewise unexplored was how Constantine came to know that McGinty represented the defendant on appeal, why she undertook to serve as an intermediary between Dodd and McGinty, and the substance of any improprieties that she may have suggested to Dodd. As *Commonwealth* v. *Fidler, supra* at 204, notes:

> "[C]ounsel, litigants, and those acting for them may not independently contact jurors after a verdict is rendered. Counsel may investigate unsolicited information only to see if it is a matter worth bringing to the judge's attention.
>
> "Any counsel or litigant who independently contacts jurors 'acts at his peril, lest he be held as acting in obstruction of the administration of justice . . . . [A] searching or pointed examination of jurors in behalf of a party to a trial is to be emphatically condemned.' " (footnote omitted).

*Commonwealth* v. *Fidler, supra*, quoting from *Rakes* v. *United*

.

*States*, 169 F.2d 739, 745-746 (4th Cir.), cert. denied, 335 U.S. 826 (1948).

The motion judge's refusal to permit the Commonwealth to inquire into Constantine's contacts with Dodd was error that irreparably tainted what followed. See *Commonwealth* v. *Dixon*, 395 Mass. at 153, quoting from *Commonwealth* v. *Fidler*, *supra* at 202 (unrestricted posttrial interview of juror by the defendant or his agent "would defeat the important interests protected by restrictions on the use of juror testimony to impeach verdicts"). By accepting the defendant's showing as adequate over the Commonwealth's repeated objection and request for inquiry of Constantine, the motion judge not only conducted an unnecessary and improper examination of jurors, but did so without information that may well have colored the credibility assessments and conclusions arrived at during the ensuing inquiry.

We are mindful that the motion judge's factual findings reflect credibility assessments that are not within the province of an appellate court. See *Commonwealth* v. *Kincaid*, 444 Mass. at 388. We also recognize that in the ordinary case, even when inappropriate information is learned from a postverdict inquiry, that information cannot be ignored. Compare *id.* at 391-392 (inappropriately revealed information regarding aspects of jury deliberations may not be disregarded). Nor does a *Fidler* violation necessarily require suppression of evidence obtained improperly. See *Commonwealth* v. *Solis*, 407 Mass. at 401-402 (deterrent effect of an exclusionary rule not needed to deter *Fidler* violations arising from counsel's actions where a disciplinary rule incorporating *Fidler*'s constraints can be devised).[14] "A rule excluding relevant evidence, beneficial to a defendant and *obtained through no wrongdoing by the defendant*, would raise questions of fair trial and due process. Once such evidence is acquired, the defendant should not be denied its use because of his counsel's error." (Emphasis added.) *Id.* at 402. At this juncture, we need not decide whether the improper contact and importuning of a juror in violation of *Fidler* by the defendant

[14]We note that the disciplinary rule foreshadowed in *Commonwealth* v. *Solis*, *supra*, has not come to pass. Indeed, the disciplinary rule that existed at that time has since been struck. In any event, a disciplinary rule incorporating the restrictions of *Fidler* would have no effect on the unwanted solicitations of jurors by a defendant himself.

himself might call for imposition of an exclusionary rule. See
*ibid.* Here, proof that the defendant orchestrated Constantine's
contacts with Dodd not only might have resulted in the motion
judge's declining to conduct a postverdict inquiry of jurors but
also likely would have colored the judge's over-all credibility
assessments and factual determinations. This is especially so
given the equivocal and varied recollections of the other jurors
regarding whether and when the judge entered the jury delibera-
tion room, the unwavering testimony of the trial judge and the
court officers on that score, and the enigmatic nature of the mo-
tion judge's finding that the testimony of the fifth juror served
as a linchpin for confirming his finding that the trial judge
entered the jury room.

In sum, this is not an ordinary case. The postverdict inquiry
of jurors was not only flawed from the outset by the failure to
permit inquiry into whether Constantine's contacts with Dodd
were solicited by the defendant, but also that failure carried the
real possibility of improperly coloring the judge's over-all cred-
ibility assessments. Turning a blind eye to what may have oc-
curred in that regard places at risk the integrity of the entire
system for postverdict examination of jurors.

Accordingly, we conclude that the order allowing the defend-
ant's motion for a new trial must be vacated and the matter
remanded to the District Court for proceedings consistent with
this opinion. Upon remand, the Commonwealth shall be permit-
ted to inquire into the basis underlying the defendant's showing
in support of his request for posttrial contact of the jurors, includ-
ing, without limitation, examination of Barbara Constantine, and
the judge may take such other evidence and hear such other wit-
nesses as he or she deems necessary to resolve the defendant's
motion. In these circumstances, we conclude that all proceedings
on remand should be considered anew by a different judge.

*So ordered.*