COMMONWEALTH *vs.* JOHN W. FIDLER.

Middlesex. October 4, 1978. — January 30, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Evidence*, Relating to deliberation by jurors. *Jury and Jurors. Practice, Criminal*, Deliberation of jury.

The Massachusetts rule against impeachment of a verdict by testimony of jurors, while precluding juror testimony to show the role which an improper influence played in the jury's decision, permits juror testimony to establish the existence of an improper influence on the jury. [193-198]

In considering a motion for a new trial of a criminal case, the judge did not err in refusing to consider those portions of a juror's affidavit concerning juror discussion of matters they had been instructed to disregard. [198-199]

In considering a motion for a new trial of a criminal case, the judge did not err in refusing to consider an allegation in a juror's affidavit concerning a remark made during deliberations by another juror where the remark may have reflected the juror's view of the evidence and did not constitute a disturbing influence of an extraneous matter. [199]

An allegation in a juror's affidavit in support of a defendant's motion for a new trial of a criminal case that another juror stated that the defendant had been shot at a month earlier was sufficient to entitle the defendant to a hearing on his claim that a juror had improperly introduced extraneous matter to the jury. [199-201]

Counsel, litigants, and those acting for them may not independently contact jurors after a verdict is rendered; however, counsel may investigate unsolicited juror information to see if it is a matter worth bringing to the judge's attention. [201-204]

INDICTMENT found and returned in the Superior Court on February 12, 1974.

The case was tried before *Keating*, J., and a motion for a new trial was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael J. McHugh*, Legal Assistant to the District Attorney, for the Commonwealth.

*James W. Lawson* for the defendant.

ABRAMS, J. By its application for further appellate review the Commonwealth seeks reversal or modification of an Appeals Court decision pertaining to the impeachment of jury verdicts through evidence both of "extraneous" outside influences on the jury and of intra-jury communications. This issue was raised by the defendant's motion for a new trial, which was denied by the trial judge.[1] The Commonwealth also urges this court to speak to the issue of the conduct of post-verdict interrogation of jurors by litigants or by counsel. We are in agreement with the Appeals Court in concluding that a hearing must be held. We reach our result on different grounds, and we limit the scope of the hearing.

We state only those facts relevant to the hearing on the motion for a new trial. Fidler based his motion on allegations that the jurors' deliberations were influenced by matters they had been instructed to disregard, and by extraneous matters not introduced in evidence. In support of this motion Fidler offered the affidavit of a juror named Russell. The Russell affidavit alleged four instances of juror misconduct during deliberations.

Two of the alleged instances of misconduct involved consideration by the jurors of matters the judge had instructed them to ignore. The affidavit alleged that there was "extensive discussion" of one defense witness's testimony (elicited on cross-examination) that he had given similar testimony in a previous trial for a defendant who

---

[1] The defendant did not seek further appellate review. Thus that part of the Appeals Court decision which affirmed the judgment of conviction is not before us. *Commonwealth* v. *Fidler*, 6 Mass. App. Ct. 28 (1978).

had been convicted of armed robbery three or four months earlier. The judge had struck that testimony and instructed the jury to disregard it.

Russell's affidavit also alleged that during the jury's deliberation there was "significant talk" concerning a remark by the judge on Fidler's ability to take the stand.[2] The judge instructed the jury that any reference he made to Fidler's ability to testify was inadvertent. He told them to strike the remark from their minds because Fidler had no obligation to take the stand.

The affidavit alleged that in addition to considering material struck by the judge, the jurors were exposed to information which was not admitted or even discussed at trial. One juror allegedly stated to the others, "People who run around with guns like that ought to be afraid. Maybe someone might shoot at them, someday." The affidavit alleged that another juror responded, "They did shoot at him last month and almost got him in Charlestown." Russell then allegedly said, "I thought we weren't supposed to know anything about this case ahead of time," and the juror denied knowing anything about the case in advance.

The affidavit states that after trial Russell approached an assistant district attorney at the court house, and asked to whom she should report jury misconduct. Russell was referred to a State police detective, but she "was not satisfied." She then called the American Civil Liberties Union on whose advice she contacted Fidler's attorney.

A hearing was held on Fidler's motion at which defense counsel offered the Russell affidavit. The judge refused to

---

[2] The defendant objected both to the admission in evidence of the defense witness's prior testimony and to the judge's comment on the defendant's ability to take the stand. The Appeals Court found that error, if any, was cured by the judge's instructions. *Commonwealth* v. *Fidler, supra* at 32. Fidler did not request further appellate review of that decision. Therefore, we consider these matters only as they relate to the motion for a new trial.

consider the affidavit, or to take oral testimony from Russell and denied the motion.

The Commonwealth argues that the judge's refusal to accept the Russell affidavit is mandated by the rule prohibiting use of juror testimony to impeach jury verdicts. *Woodward* v. *Leavitt,* 107 Mass. 453 (1871). *Harrington* v. *Worcester, Leicester, & Spencer St. Ry.,* 157 Mass. 579 (1893). *Commonwealth* v. *Meserve,* 156 Mass. 61 (1892). *Bridgewater* v. *Plymouth,* 97 Mass. 382 (1867). *Capen* v. *Stoughton,* 16 Gray 364 (1860). *Cook* v. *Castner,* 9 Cush. 266 (1852). See Greenberg, Impeachment of Jury Verdicts, 53 Marq. L. Rev. 258, 260-263 (1970).

The rule against juror impeachment of a verdict first appeared in *Vaise* v. *Delaval,* 99 Eng. Rep. 944 (K.B. 1785), and was soon adopted in this country.[3] The policy supporting the rule was stated in *McDonald* v. *Pless,* 238 U.S. 264, 267-268 (1915), where the Court stated that without the rule, "[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." Other policies advanced in support of the rule include reducing incentives for jury tampering, promoting the finality of verdicts, and maintaining confidence in jury verdicts. *Government of the V.I.* v. *Gereau,* 523 F.2d 140, 148 (3d Cir. 1975), cert. denied, 424 U.S. 917 (1976). Wallin, To Impeach or Not to Impeach: The Stability of Juror Verdicts in Federal Courts, 4 Pepperdine L. Rev. 343, 344 (1977).

---

[3] The decision in *Vaise* v. *Delaval,* 99 Eng. Rep. 944 (K.B. 1785), was based on the principle that a juror may not allege his own turpitude, and was a departure from prior common law practice. ABA Standards Relating to Trial by Jury 166 (Approved Draft 1968).

The Massachusetts rule on juror impeachment of a verdict is expressed in *Woodward* v. *Leavitt*, 107 Mass. 453, 460 (1871): "The proper evidence of the decision of the jury is the verdict returned by them upon oath and affirmed in open court; it is essential to the freedom and independence of their deliberations that their discussions in the jury room should be kept secret and inviolable; and to admit the testimony of jurors to what took place there would create distrust, embarrassment and uncertainty." We still adhere to our rule which requires courts to protect jurors and their verdicts from unwarranted intrusions and which emphasizes the importance of the finality of jury verdicts.

However, contrary to the Commonwealth's claim, our rule does not create an absolute prohibition against juror testimony to impeach a verdict. In *Woodward* v. *Leavitt*, *supra* at 466, we concluded that juror testimony is admissible to establish the existence of an improper influence on the jury, but is not admissible to show the role which the improper influence played in the jury's decisions.[4] See *Commonwealth* v. *Harrison*, 368 Mass. 366 (1975). Under our rule we have upheld the admission of juror testimony to demonstrate that a juror took an unauthorized view, but not to show the effect of the view on the jurors' deliberations. *Harrington* v. *Worcester, Leicester, & Spencer St. Ry.*, 157 Mass. 579, 581-583 (1893). The Supreme Court drew the same distinction in *Mattox* v. *United States*, 146 U.S. 140 (1892). See also *People* v. *Hutchinson*, 71 Cal. 2d 342, 349, cert. denied, 396 U.S. 994 (1969); *People* v. *DeLucia*, 20 N.Y.2d 275, 278-279 (1967).[5]

[4] In *Woodward* v. *Leavitt*, 107 Mass. 453, 466 (1871), we stated, "[W]here evidence has been introduced tending to show that, without authority of law, but without any fault of either party or his agent, a paper was communicated to the jury, which might have influenced their minds, the testimony of the jurors is admissible to disprove that the paper was communicated to them, though not to show whether it did or did not influence their deliberations and decision. A juryman may testify to any facts bearing upon the question of the existence of the disturbing influence, but he cannot be permitted to testify how far that influence operated upon his mind."

[5] The *Woodward* rule has also been embodied in Fed. R. Evid. 606(b)

We think our rule limiting juror testimony to the existence of extraneous "disturbing" influences protects jurors and their verdicts. It also protects litigants from the "disturbing influence" of extraneous matters. See *Woodward, supra* at 466.

The Commonwealth's suggestion of an inflexible rule excluding all juror testimony offered to impeach verdicts achieves stability at the expense of doing justice between the parties—a result not consistent with the ideal of trial by an impartial jury. 53 Marq. L. Rev., *supra* at 274. Litigants are entitled to a decision on the evidence at trial, governed by the rules of evidence. Therefore, we conclude that *Woodward* does not prohibit juror testimony from showing, for example, that a jury verdict may have been based on: (1) unauthorized views of sites by jurors (*Harrington v. Worcester, Leicester, & Spencer St. Ry.*, 157 Mass. 579, 581 [1893]; *People v. DeLucia*, 20 N.Y.2d 275, 278-280 [1967]); (2) improper communications to the jurors by third persons (*Mattox v. United States*, 146 U.S. 140, 148-150 [1892]; *People v. Hutchinson, supra* at 348-351); or (3) improper consideration of documents not in evidence (*United States v. Thomas*, 463 F.2d 1061, 1063-1065 [7th Cir. 1972] [juror consideration of newspaper article]). See cases collected at 4 Pepperdine L. Rev., *supra* at 358-364. Where a verdict is the product of misconduct based on extraneous matter, an inflexible rule that bars the best evidence of that misconduct does not serve the interests of providing a fair and just trial for litigants. 53 Marq. L. Rev., *supra*.

---

(1978), which creates a general rule against impeachment of verdicts by jurors, but provides that "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." See also Uniform R. Evid. 606(b) (1975); Model Code of Evidence rule 301 (1942); ABA Standards Relating to Trial by Jury § 5.7 (Approved Draft 1968).

Moreover, juror testimony concerning the existence of extraneous influences does not, in our view, unduly intrude on jury deliberations. The existence of such influences often can be objectively ascertained, and many times the evidence can be corroborated. *People* v. *DeLucia*, 20 N.Y.2d 275, 279 (1967). We do not think that allowing such evidence will result in unduly extended litigation or in wholesale upsetting of jury verdicts. *People* v. *Hutchinson, supra* at 350. Carlson & Sumberg, Attacking Jury Verdicts: Paradigms for Rule Revision, 1977 Ariz. St. L. J. 247, 252. Our decision does not permit evidence concerning the subjective mental processes of jurors, such as the reasons for their decisions.[6] However, we conclude that, "[w]here overt factors are present by which the verdict's validity can be objectively assessed, the law's commitment to a just result warrants receiving evidence as to the alleged acts of misconduct. But where the juror would testify solely to matters resting in his own consciousness, the dubious value of the testimony is outweighed by the need for stability in verdicts" and the testimony should be excluded. 3 J. Weinstein & M. Berger, Evidence par. 606[03], at 606-25 (1978). We recognize that the line between overt factors and matters resting in a juror's consciousness is not easily drawn, and difficult cases will arise. Nevertheless, we think it possible to draw the line in most cases, and, in any event, the better course is to try to do so rather than refuse to try.

We turn to the affidavit under consideration in this case. We think that the judge was correct in refusing to consider those portions of the Russell affidavit concerning juror discussion of matters they were instructed to disregard. These are not extraneous influences on the jury. Such matters are a part of the internal decision making process of jury deliberations. Even if some juror

---

[6] A similar policy is expressed by the Legislature in G. L. c. 277, § 13, which prohibits a grand juror from testifying in court disclosing how he voted or why.

comments on evidence struck by the judge, it must be presumed that in reaching the verdict, the jurors heeded the judge's instructions. To prove otherwise would require probing the minds of the jurors. See 4 Pepperdine L. Rev., *supra* at 352. Thus, a juror may not testify to jury deliberations concerning the judge's instructions. *Bridgewater* v. *Plymouth*, 97 Mass. 382, 390 (1867). *State* v. *Morgan*, 207 Kan. 581, 582-583 (1971). ABA Standards Relating to Trial by Jury, *supra* at 171. Comment, Impeachment of Jury Verdicts by Jurors: A Proposal, 1969 U. Ill. L. F. 388, 392. 1977 Ariz. St. L.J., *supra* at 257.

We also think that the judge was correct in refusing to consider the allegation that one juror made a general comment concerning people who "run around with guns." This remark may well have been part of the juror's view of the evidence before him or her in the armed robbery trial. Thus it is not available to impeach the verdict; it is not a "disturbing influence" of an extraneous matter. See *Woodward, supra* at 466. Moreover, general comments may be a reaction to or inference from the evidence. "We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies. These involve the very human elements that constitute one of the strengths of our jury system, and we cannot and should not excommunicate them from jury deliberations." *Government of the V. I.* v. *Gereau, supra* at 151-152, quoting from *United States* v. *McKinney*, 429 F.2d 1019, 1022-1023 (5th Cir.), aff'd 434 F.2d 831 (1970), cert. denied, 401 U.S. 922 (1971). See *Commonwealth* v. *Harrison*, 368 Mass. 366, 374-375 (1975); *United States ex rel. Owen* v. *McMann*, 435 F.2d 813, 817 (2d Cir. 1970), cert. denied, 402 U.S. 906 (1971).

However, we think the judge may have read *Woodward* too rigidly by refusing to consider that portion of Russell's affidavit which alleged that one juror stated Fidler had been shot at in Charlestown a month earlier. There was no mention of any such occurrence in court, so, if the allegation is proved, the only possible source of this infor-

mation was extraneous to the trial. In view of the charge
of armed robbery, we think the judge should have held a
hearing limited to whether this statement was in fact
made, and whether it may have constituted an extrane-
ous "disturbing influence."

Clearly if such facts had been communicated to the jury
by a third party, the communication would be an extrane-
ous influence, which could be proved by juror testimony.
*People* v. *Hutchinson, supra* at 349-350. Cf. *Parker* v.
*Gladden*, 385 U.S. 363 (1966). We perceive no valid dis-
tinction between extraneous facts such as those involved
in this case introduced by a juror and those communicat-
ed to the jury by a third person. *United States ex rel. Owen*
v. *McMann, supra* at 819-820. *United States* v. *Howard*,
506 F.2d 865, 867 (5th Cir. 1975). See *Downey* v. *Peyton*,
451 F.2d 236, 239 (4th Cir. 1971).

This result follows from our decision which holds that
if the information had been gathered by a juror on an
unauthorized view, this fact can be shown by juror tes-
timony. *Harrington* v. *Worcester, Leicester, & Spencer St.
Ry., supra* at 581. See also *People* v. *DeLucia, supra* at 729.
Similarly if a juror brings to the jury room a relevant
document not in evidence, this can be shown by juror
testimony. Palmer, Post-Trial Interview of Jurors in the
Federal Courts—A Lawyer's Dilemma, 6 Hous. L. Rev.
290, 302-303 (1968). We see no reason why the admissibili-
ty of juror testimony should focus on how or where the
extraneous facts were gathered. Advisory Committee's
Note on Rule 606(b), 3 J. Weinstein & M. Berger, Evi-
dence at 606-11. *United States ex rel. Owen* v. *McMann,
supra* at 820. We think that if specific facts not mentioned
at trial concerning one of the parties or the matter in
litigation were brought to the attention of the deliberat-
ing jury by a juror, that such misconduct may be proved
by juror testimony.

Therefore, Fidler is entitled to a hearing limited to his
claim that one juror improperly introduced extraneous
matter into the jury room by stating that Fidler had been

shot at a month earlier. We base this result on our decision in *Woodward* v. *Leavitt*, 107 Mass. at 466.[7]

At the hearing, Fidler bears the burden of demonstrating that the jury were in fact exposed to the extraneous matter. To meet this burden he may rely on juror testimony. If the judge finds that the extraneous matter was introduced, the burden then shifts to the Commonwealth to show beyond a reasonable doubt that Fidler was not prejudiced by the extraneous matter. See *United States* v. *Howard, supra* at 869; *United States* v. *Blair*, 444 F. Supp. 1273, 1275 (D.D.C. 1978).

The judge may not receive any evidence concerning the actual effect of the matter on the juror's decision, for this would involve probing the juror's thought processes. Rather, the judge must focus on the probable effect of the extraneous facts on a hypothetical average jury.[8] *United States ex rel. Owen* v. *McMann, supra* at 819. Comment, Impeachment of Jury Verdicts, 25 U. Chi. L. Rev. 360, 363-364 (1958).

The right to use juror evidence necessarily implies a method to gather that evidence.[9] 3 J. Weinstein & M.

---

[7] *Commonwealth* v. *Meserve*, 156 Mass. 61 (1892), presented the question of juror testimony in a different procedural posture. To the extent that *Meserve* conflicts with our holding in this case, we decline to follow it.

[8] The judge may consider such matters as: (1) the fact that the improper remark prompted an immediate reprimand from another juror (Pope, Jury Misconduct and Harm, 12 Baylor L. Rev. 355, 366-367 [1960]); (2) whether there was overwhelming evidence of guilt (*United States* v. *McKinney*, 434 F.2d 831, 832-833 [5th Cir. 1970], cert. denied, 401 U.S. 922 [1971]); and (3) whether the extraneous matter produced such a high probability of prejudice that error must be inferred. See *State ex rel. Owen* v. *McMann*, 435 F.2d 813, 818 (2d Cir. 1970), cert. denied 402 U.S. 906 (1971).

[9] Our comments are directed solely to trial counsel, litigants, and those acting on their behalf.

As to jurors, they are routinely given the following advice: "There is no rule that prohibits you from discussing your juror service on a particular case with anyone after the verdict. It is preferable that you do not reveal the names of fellow jurors, how the verdict was arrived

Berger, Evidence par. 606[03], at 606-26 (1978). Harnsberger, Amend Canon 23 or Reverse Opinion 109, 51 A.B. A.J. 157, 159 (1965). We think the jury system is best protected by a rule requiring that any post-verdict interviews of jurors by counsel, litigants, or their agents take place under the supervision and direction of the judge. We decline to permit unrestricted posttrial interviews, as we think such a practice would defeat the important interests protected by restrictions on the use of juror testimony to impeach verdicts. Moreover, permitting unbridled interviews of jurors could lead to harassment of jurors, exploitation of jurors' thought processes, and diminished confidence in jury verdicts. See *United States* v. *Moten,* 582 F.2d 654, 664-665 (2d Cir. 1978); 51 A.B.A.J., *supra* at 158.

A rule requiring postverdict interviews to be supervised and directed by the judge also prevents the interrogation from exceeding its proper scope.[10] See *Miller* v. *United States,* 403 F.2d 77, 80-82 (2d Cir. 1968); *United States* v. *Rocks,* 339 F. Supp. 249, 255 (E.D. Va. 1972); *United States* v. *Driscoll,* 276 F. Supp. 333, 338-339 (S.D.N.Y. 1967), rev'd on other grounds, 399 F.2d 135 (2d Cir. 1968). Further, court supervision and direction prevents arguments and suggestions addressed to the juror's sympathies, or calculated to play on possible resentments

---

at, or other sensitive matters that occurred during secret deliberations. If any person should attempt to harass or embarrass you or seek information which would harass or embarrass a fellow juror, you should report this to the court immediately. It is very important that the integrity of our jury system be maintained." The Trial Juror's Handbook, Office of Jury Commissioner for Middlesex County 20-21 (1978).

[10] This rule requiring the court to supervise the interrogation is consistent with practice in some jurisdictions (see *United States* v. *Hall,* 424 F. Supp. 508, 538 [W.D. Okla, 1975], aff'd 536 F.2d 313 [10th Cir. 1976]; *United States* v. *Narciso,* 446 F. Supp. 252, 324 [E.D. Mich. 1977]; *United States* v. *Sanchez,* 380 F. Supp. 1260, 1266 [N.D. Tex. 1973], aff'd 508 F.2d 388 [5th Cir. 1975]; Rules Governing the Courts of New Jersey, rule 1:16-1 [1969]). See also *United States* v. *Brasco,* 516 F.2d 816, 819 n.4 (2d Cir.), cert. denied, 423 U.S. 860 (1975).

against fellow jurors. See *United States* v. *Moten, supra* at 665.

The freedom and independence of jury deliberations are best protected by court supervision and direction of postverdict interviews. The judge may make such order as he deems appropriate for the administration of justice. He may decide to deny the request, or he may decide to question the jurors himself, allowing counsel for both parties to submit proposed questions and to object to any questions he intends to ask. See *United States* v. *Moten, supra* at 665; *Government of the V.I.* v. *Gereau, supra* at 143-146; *United States* v. *Winters,* 434 F. Supp. 1181, 1183-1184 (N.D. Ind. 1977); *Hildebrand* v. *Mueller,* 202 Kan. 506, 510 (1969). He may, in his discretion, allow the parties to conduct the interrogation themselves.

Postverdict interview should be initiated only if the court finds some suggestion that there were extraneous matters in the jury's deliberations. If counsel or litigants without solicitation obtain information suggesting that "extraneous matters" were brought into the jury deliberations, counsel may investigate to determine whether there is matter requiring the attention of the judge. If counsel thinks it warranted, counsel should bring the information to the judge by affidavit, if possible.[11] The judge may then decide what, if anything, should be done in light of the submission. Counsel, litigants and the courts should remember that, "[h]istorically, interrogations of jurors have not been favored by federal courts except where there is some *showing* of illegal or prejudicial intrusion into the jury process." *United States* v. *Riley,* 544 F.2d 237, 242 (5th Cir. 1976), cert. denied, 430 U.S. 932 (1977). Moreover, counsel may not "rake up the past in an effort to find some basis for reading into it some features which the defense would like to stress on another motion for a new trial." *United States* v. *Hall,* 424 F. Supp. 508, 538 (W.D. Okla, 1975), aff'd 536 F.2d 313 (10th

---

[11] In the present case trial counsel apparently used this procedure.

Cir. 1976), quoting from *United States* v. *Miller,* 284 F. Supp. 220 (D. Conn. 1968).

In sum, counsel, litigants, and those acting for them may not independently contact jurors after a verdict is rendered. Counsel may investigate unsolicited information only to see if it is a matter worth bringing to the judge's attention.[12]

Any counsel or litigant who independently contacts jurors "acts at his peril, lest he be held as acting in obstruction of the administration of justice .... [A] searching or pointed examination of jurors in behalf of a party to a trial is to be emphatically condemned. It is incumbent upon the court to protect jurors from it." *Rakes* v. *United States,* 169 F.2d 739, 745-746 (4th Cir.), cert. denied, 335 U.S. 826 (1948).

The order denying the defendant's motion for a new trial is reversed, and the case remanded to the Superior Court for a hearing as to juror misconduct limited to that portion of the juror's affidavit which alleges a statement that someone shot at Fidler about a month earlier.

*So ordered.*

---

[12] It appears that the Superior Court has an instruction basically consistent with our view which may be helpful if given to jury pools. The instruction states in part: "It is, of course, conceivable that there may be certain circumstances where, in order to prevent a possible miscarriage of justice, interrogation of jurors may be proper and in order. That can be accomplished under the supervision of the court. The attorneys can file an appropriate motion indicating the reasons which impel them to seek an inquiry of the jurors; and if the court is so persuaded that the interests of justice require it, the interrogation of jurors can take place at the direction of and under the supervision of the court. In that way, the integrity of the judicial system is preserved and jurors are not subjected to harassment. Jurors will also be confident that, under the direction of the court, whatever conduct they participate in has been judicially approved ...."