GLOBE NEWSPAPER COMPANY *vs.* COMMONWEALTH &
another.[1]

Suffolk. May 30, 1990. - July 10, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Jury and Jurors. Practice, Criminal*, Deliberation of jury, Interrogation of
jurors, Public trial. *Constitutional Law*, Public trial.

Discussion of the decisions of the United States Supreme Court with re-
spect to the public's right of access to criminal proceedings as the prin-
ciples stated therein would apply to postconviction proceedings. [883-
884]

In a criminal proceeding, the public is entitled to be present at any post-
conviction hearing concerning extraneous influences on a jury unless the
judge rules, based on detailed findings of fact, that closing the court-
room is warranted in the public interest. [885]

In a criminal case there was no basis in the record of postconviction pro-
ceedings concerning extraneous influences on the jury to warrant the
judge's closing the courtroom to the public during the testimony of a
certain witness. [884-886]

Discussion of the principles and procedures applicable to the public availa-
bility of transcripts of in camera proceedings in which jurors who had
deliberated in a murder case testified concerning extraneous prejudicial
influences on the jury. [886-887]

Discussion of the considerations that bear on the right of the public to
have access to any process a judge might elect to follow in response to a
claim that a juror or jurors were subject to extraneous prejudicial influ-
ences. [887-889]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on April 4, 1990.

The case was heard by *Nolan*, J.

CIVIL ACTION commenced in the Supreme Judicial Court
on April 6, 1990.

---

[1]Shawn Drumgold, who has not participated in this appeal.

*E. Susan Garsh* (*Beth A. Cataldo* with her) for the plaintiff.

*Paula J. DeGiacomo*, Assistant Attorney General, for the Commonwealth.

WILKINS, J. On October 13, 1989, a jury in the Superior Court in Suffolk County found Shawn Drumgold guilty of murder in the first degree. Two weeks later, the trial judge received and had docketed an affidavit of a juror named Wilson who, just prior to jury deliberations in the Drumgold case, had been designated as one of three alternate jurors. The judge ordered a posttrial hearing concerning the matters raised in the alternate juror's affidavit. At that hearing, Drumgold moved for leave to examine the jurors, or, in the alternative, to interview them. He also moved for a new trial. Drumgold claimed that there had been an extraneous prejudicial influence on the jury as to which he was entitled to inquire pursuant to principles set forth in *Commonwealth* v. *Fidler*, 377 Mass. 192, 197-198 (1979). He asserted that improper comments by a court officer to certain jurors may have affected the jury's verdict. The judge denied each of these motions.[2]

Drumgold then sought relief from a single justice of this court. After reviewing the transcript of the hearing on Drumgold's claim that one or more jurors had been affected by improper extraneous influences, the single justice concluded that Drumgold was entitled to an "evidentiary hearing" on the question of what a court officer may have said to one or more jurors about the participation of Wilson in the jury deliberations. The single justice stated that the "inquiry would include who heard the remark, who heard of the remark, and, when it was made, if it was made" but that no inquiry was permissible concerning the effect any extraneous influence might have had on the jury.[3] A judgment ordering an evidentiary hearing was entered on January 25, 1990.

---

[2]Drumgold also argued that Wilson may have been improperly selected as an alternate, a point the judge agreed could be pursued.

[3]In explanation of why relief was being granted under G. L. c. 211, § 3 (1988 ed.), the single justice commented: "This matter is one that should

On April 2, 1990, the trial judge in camera questioned six jurors and alternates. We do not know how the in camera questioning was conducted. At the commencement of the proceeding, the judge had raised on his own the question whether he should exclude the public, and hence the press, from the proceeding. He ruled that the public would be excluded. On the next day, the plaintiff before us, the Globe Newspaper Company (Globe), moved that all further proceedings be open. Both Drumgold and the Commonwealth argued that they should be closed. The judge denied the Globe's motion but indicated that during the next week, after the conclusion of the hearing, an expedited but redacted transcript would be available, excluding "some things [that] should not be made public."

The judge gave his reasons for closing the proceeding. He believed that public disclosure of information might have a chilling effect on the testimony before him of former jurors because they could learn from the press what some other jurors had already said. He made no mention of any reason for closing the courtroom during the testimony of the court officer who allegedly made the prejudicial remark, except that his testimony was "part in parcel of the same thing." Apparently, the remaining nine jurors testified on April 3. The hearing was continued for the testimony of the court officer.[4]

On April 4, 1990, the Globe unsuccessfully sought relief pursuant to G. L. c. 211, § 3, from a single justice of this

---

best be investigated factually now rather than after an appeal. To be sure, the issue can be raised by an appeal. The parties agree, however, that, if a factual inquiry must be made, now is the preferable time to do it. Thus, I shall enter an order that, in [an] evidentiary hearing, the trial judge consider the defendant's claim that a court officer made a remark that one or more jurors heard or learned of and that that remark may have had a prejudicial, extraneous influence on the jury. I express no opinion on whether such a remark would or would not be a prejudicial, extraneous influence on a jury."

[4]That hearing was never held because, on April 9, 1990, this court ordered a stay of further proceedings in the Superior Court. At oral argument we were advised that no transcripts of the jurors' testimony have yet been made available to the Globe.

court, asking that the orders closing the proceeding be annulled and that the Globe be allowed immediate access to unredacted transcripts of the proceedings that had already taken place. The single justice denied relief on April 6 without stating any reasons. The Globe promptly appealed from the order of the single justice.[5]

If the testimony of the court officer should be open to the public or if the public is unquestionably entitled to access to an unredacted copy of the transcript of the jurors' testimony, an appeal from the trial judge's order would not be an adequate remedy. A complete transcript is not equivalent to presence in the courtroom. See *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 597 n.22 (1980) (Brennan, J., concurring); *Globe Newspaper Co.* v. *Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989). A redacted transcript is even less satisfactory. Thus, if the Globe's substantive claims are correct, relief under G. L. c. 211, § 3, is warranted.[6]

As far as we are aware, the Globe did not present to the single justice in this case the circumstances leading to the claim that there had been an improper extraneous influence on the jury. That information appears in the record in the first single justice proceeding (Commonwealth *vs.* Shawn Drumgold, S.J.C. No. 90-9) where a copy of Wilson's posttrial affidavit is on file. This is a matter of which we may take judicial notice. See *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983). We consider that affidavit so that we may assess the factual basis of the trial judge's decision to close the courtroom. As will be seen, in cases of this sort, an af-

---

[5]The Globe also filed a direct petition under G. L. c. 211, § 3, with the full court. Because, as the Commonwealth agrees, the Globe has a right to appeal from the order of the single justice, and because the direct petition adds nothing to that appeal, we shall deny relief on that petition.

The Commonwealth's claim that the Globe waived its right to access to postverdict questioning of the jurors and of the court officer lacks merit for the reasons set forth in the Globe's brief.

[6]Because the jurors have apparently all testified, the Globe agrees that it cannot have access to their oral testimony. At the conclusion of this opinion we attempt to provide guidance for future consideration of claims of a right of access to juror interviews or testimony in such situations.

firmative showing must be made on the record of the basis for closing the courtroom.

The Wilson affidavit states that a court officer, who may have believed that Wilson was not in favor of a guilty verdict, said to certain jurors, not in Wilson's presence, that he hoped that Wilson "is not on the deliberating jury or else this trial will be dragged on and it is already costing the state too much money." Wilson challenged the propriety of the process by which she was selected as an alternate. The affidavit alleged conversations between certain jurors and the court officer that dealt with matters that should not have been discussed. If true, the affidavit discloses that certain jurors discussed the merits of the case at least among themselves before the jury were charged and prior to their deliberations.

The Globe has argued that the public has a constitutional right, under both the State Constitution and the Constitution of the United States, to be present in the courtroom during postverdict testimony concerned with the existence of an extraneous prejudicial influence on a jury. Although the Globe makes no claim that common law principles or rules of general superintendence issued by this court should require keeping the courtroom open, we reject any thought that, because a case is argued only on constitutional principles, we must deal with it on that basis, if it may be disposed of short of constitutional pronouncements. See *Matter of McKnight*, 406 Mass. 787, 797 (1990); *Beeler* v. *Downey*, 387 Mass. 609, 613 n.4 (1982).

When we discuss the principles and procedures that govern the closing of courtrooms in circumstances such as this, we cannot, of course, be unmindful of the constitutional rights of the public to open judicial proceedings. Principles we shall express as to this case, and for the handling of similar situations in the future, are designed with those constitutional rights in mind.

The public generally has the right to attend the trial of criminal cases. See *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 603 (1982); *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 580 (1980) (opinion of Burger, C.J.);

*id.* at 582 (White, J., concurring); *id.* at 584 (Stevens, J., concurring); *id.* at 598 (Brennan, J., concurring in the judgment); *id.* at 599 (Stewart, J., concurring in the judgment); *id.* at 604 (Blackmun, J., concurring in the judgment). If a trial, or part of a trial, is to be closed to the public, the judge must make specific findings of fact justifying that action: a statutory provision permitting closure will not alone justify the closing of a courtroom. *Globe Newspaper Co.* v. *Superior Court, supra* at 607-609 & n. 20. The public's right of access extends to voir dire proceedings concerning individual potential jurors. *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 508-513 (1984). "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values . . . ." *Id.* at 510. There is, moreover, a public right of access to pretrial criminal hearings. *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 12-13 (1986). Although the Supreme Court has not ruled on the public's right of access to postverdict proceedings, the principles expressed in the cases we have just cited indicate that the public has a right of access to a hearing on a motion for a new trial and to any similar postconviction proceeding. See *CBS, Inc.* v. *United States Dist. Court,* 765 F.2d 823, 825 (9th Cir. 1985) (Kennedy, J.).[7]

1. We see no reason, on this record, why the public should be excluded from the courtroom when the court officer testifies. The tradition in the Commonwealth is that courts are open to the public. In the absence of a statute, a rule of court, or a principle expressed in an appellate opinion authorizing or directing a courtroom to be closed, the expectation is that courtrooms will be open. In this case, no statute

---

[7]The court stated: "We find no principled basis for affording greater confidentiality to post-trial documents and proceedings than is given to pretrial matters. The primary justifications for access to criminal proceedings, first that criminal trials historically have been open to the press and to the public, and, second, that access to criminal trials plays a significant role in the functioning of the judicial process and the government system . . . apply with as much force to post-conviction proceedings as to the trial itself" (citation omitted). *Id.*

or rule of court authorized the closing of the courtroom to the public.

There is no apparent reason to keep the court officer's testimony confidential. The alleged impropriety occurred before the jury commenced their deliberations. His testimony thus would not intrude into the forbidden territory of the jury's deliberations, nor could his upcoming testimony have any adverse effect on the jurors, all of whom have, it appears, already testified. Moreover, a claim has been made publicly that an employee of the judicial department engaged in inappropriate conduct during the course of a trial on the most serious of criminal charges. Any appearance that the judicial system is covering up or suppressing information on that charge could harm the administration of justice.

While we recognize that a judge may handle an inquiry concerning extraneous influences on a jury without holding an evidentiary hearing (see *Commonwealth* v. *Fidler*, 377 Mass. 192, 203 [1979]), once a decision is made that an evidentiary hearing is to be held in the presence of the prosecutor and defense counsel, the public is entitled to be present in the absence of a ruling, based on detailed findings of fact, that confidentiality is warranted in the public interest. On the record before us, there is no finding that justifies taking the testimony of the court officer in a courtroom closed to the public. If, when the matter of the court officer's testimony comes before the judge again, the judge elects to close the courtroom to the public, he will do so properly only after making detailed findings of fact warranting the conclusion that protection of the public interest makes closure essential.[8]

There was no lawful basis on the record before us for the judge's order excluding the public from the courtroom during the court officer's testimony. Consequently, the trial judge

---

[8]The judge, of course, might be warranted in impounding such portion of his findings and conclusions as would reveal the reason why closure is required. We also recognize that certain evidence and argument bearing on the reason for closure might properly have to be given in camera in particular circumstances.

committed an error of law. Relief under G. L. c. 211, § 3, should have been granted.

2. The only issue concerning the public availability of the transcripts of the testimony of the jurors, including alternate jurors, is whether any portion of those transcripts may properly be redacted. The judge and the parties have agreed that the transcripts will be made public. We, therefore, need not consider the question whether a nonparty to a proceeding has a right to insist that a transcript be made. Furthermore, the Globe has agreed to pay the cost of preparing an expedited transcript of the relevant testimony. Hence, we need not consider whether a party or nonparty may insist on an expedited transcript at public expense.

The judge knows, and we do not know, what the testimony of the jurors was. His statement that "some things" should be redacted that "should not be made public" would be correct as to any juror testimony concerning what was said or done during the jury's deliberations (except as to the occurrence of an extraneous influence), or concerning the effect on any juror of an extraneous influence. These are matters that are not properly within the scope of a postverdict inquiry as to the existence of any extraneous prejudicial influence on jury deliberations. See *Commonwealth* v. *Fidler, supra* at 198. Testimony on these excluded matters would appropriately have been subject to a motion to strike, and the judge may properly strike that testimony from the transcript on his own motion.[9]

The judge may have good cause to redact some portion of the transcript. If he does, he should file and impound an unredacted copy of the transcript, make the redacted copy publicly available, and file a memorandum explaining his determination to redact the transcript. In these circumstances,

---

[9]There is little likelihood that any such improper testimony was given in this case, if the questions were properly phrased and the jurors' answers were responsive. The allegedly improper conduct occurred before the jury commenced their deliberations. Thus the delicate area of what various people said after jury deliberations had begun should have been irrelevant to the inquiry.

protection of the reputation of some person who acted improperly would not justify redaction. Redaction of information where disclosure would hinder an investigation of criminal wrongdoing, however, could be appropriate, at least until the investigation is concluded. The agreement of all parties to a proceeding does not by itself warrant redaction or impoundment.

If the judge determines that certain information should be redacted from the transcript, he must make written findings of fact in support of that determination. This requirement is consistent with the provision, applicable to civil cases in all trial courts, that an order of impoundment "may be made only upon written findings." See Rule 8 of the Uniform Rules on Impoundment Procedure (1990). If findings are not made, effective review of an order redacting a portion of a transcript would be impossible in any practical sense. Moreover, findings that demonstrate a public interest in nondisclosure of redacted information may discourage a claim that disclosure is required as a matter of constitutional right or, if such a claim is made, may aid in its resolution.

3. We conclude with a discussion of the considerations that bear on the right of the public to have access to the various processes that a judge might elect to follow in response to a claim that a juror or jurors were subject to an extraneous prejudicial influence. Under the general principles laid down in *Commonwealth* v. *Fidler,* 377 Mass. 192, 203 (1979), the judge has discretion to decide what process or processes of investigation should be pursued. The judge is not obliged to hold a public, or even a private, hearing on every such claim. If the judge decides to conduct an investigation or to interview jurors privately, the public does not presumptively have a right to observe the process.

There are numerous litigation-related events to which the public does not have a constitutional or any other right of access. They include grand jury proceedings, depositions, and lobby conferences and side-bar discussions at trial. Various matters involve the public interest in preserving confidentiality and must be handled in private. Examples include judicial

consideration of materials that may be entitled to nondisclosure because of statutory or common law rules of confidentiality. See, e.g., G. L. c. 233, § 20B (1988 ed.) (psychotherapist-patient privilege); G. L. c. 233, § 20J (1988 ed.) (conversations between victim and sexual assault counsellor); G. L. c. 112, § 135 (1988 ed.) (social worker privilege); *Commonwealth* v. *Amral, ante* 511, 520-521 (1990).

In connection with postverdict consideration of a claim of extraneous prejudicial influences on a jury, the public would have no right to attend interviews of jurors conducted by the prosecution or the defense or even a judge's limited inquiry of jurors conducted in the absence of counsel but with the right of counsel to submit questions through the judge. See *United States* v. *Calbas*, 821 F.2d 887, 896-897 (2d Cir. 1987), cert. denied, 485 U.S. 937 (1988); *United States* v. *Moten*, 582 F.2d 654, 666-667 (2d Cir. 1978). Of course, if information presented by a juror shows that no extraneous prejudicial influence occurred, no interview (much less an evidentiary hearing) would need to be held. See *Commonwealth* v. *Mahoney*, 406 Mass. 843, 855 (1990); *Carson* v. *Polley*, 689 F.2d 562, 580-581 (5th Cir. 1982). Indeed, in such a case, counsel may not even have the right to inspect the juror's communication. See *United States* v. *Beeler*, 648 F.2d 1103, 1103 (6th Cir.), cert. denied, 454 U.S. 860 (1981). It is difficult to conclude that the public would have greater rights of access than a defendant and his counsel.

On the other hand, there may come a moment when the substantiality of a claim of extraneous prejudicial influence reaches the level at which the judge must hold a formal hearing and make findings of fact and rulings of law. Recently, in *Commonwealth* v. *Mahoney*, 406 Mass. 843, 854-855 (1990), this court pointed out circumstances in which a judge is obliged to conduct formal hearings in connection with claims of extraneous influences on a jury. Citing *Commonwealth* v. *Fidler, supra,* and *Commonwealth* v. *Dixon*, 395 Mass. 149 (1985), the court stated that "[i]n both of these cases, based on the information contained in the respective sworn affidavits, we concluded that formal hearings were

necessary to determine whether improper external influences had tainted the validity of the jury verdicts." *Id.* at 855. The court distinguished the case before it from the *Fidler* and *Dixon* cases, because there was no affidavit but only a letter in "fairly vague and general terms" that mentioned the juror's personal opinions about the jury deliberations. *Id.*

When the allegations of an extraneous prejudicial influence on a jury are documented as well as they were in the *Fidler* and *Dixon* cases, and a formal hearing is thus called for, the proceeding assumes such a similarity to consideration of a motion for a new trial that the proceeding should be open to the public, barring some substantial reason for closing it.[10]

In any situation in which the judge is considering closing all or some portion of the proceeding, he should decide whether the goal of protecting against the disclosure of certain information might be achieved by some means other than closure. For example, if a judge is concerned about successive juror witnesses' learning what earlier juror witnesses had testified to, the judge may sequester the juror witnesses and admonish those jurors who have not yet testified not to read or listen to media accounts of the proceedings already held. Such an admonition is relied on regularly in criminal jury trials in the Commonwealth.

4. The direct petition to this court under G. L. c. 211, § 3, is dismissed. The judgment of the single justice denying relief is vacated. A judgment shall be entered declaring that (1) in the absence of explicit findings justifying the closing of the hearing at which the court officer or any other witness will testify, further proceedings in this matter shall be open to the public and (2) an unredacted transcript of the jurors'

---

[10]The Supreme Court of the United States has held that, in particular circumstances, a judge should hold a hearing to determine (and not decide ex parte) whether an alleged improper communication with a sitting juror occurred and harmed the criminal defendant. See *Remmer* v. *United States*, 347 U.S. 227, 229-230 (1954). That directive has been construed as requiring a hearing in open court. See *Miller* v. *United States*. 403 F.2d 77, 82 (2d Cir. 1968).

testimony shall be made public (and the Globe Newspaper Company shall, at its election, have an expedited copy at its expense) unless, as provided in this opinion, appropriate findings are made justifying the redaction of any part of the transcript. The order of this court staying further proceedings in the Superior Court is vacated. The rescript from this court shall be issued forthwith.

*So ordered.*