Rutberg, J.
This is a Dist./Mun. Cts. R. A. D. A., Rule 8C appeal by the plaintiff of the denial of her motion for a new trial. The defendants argue that the appeal is frivolous and request sanctions pursuant to Dist./Mun. Cts. R. A. D. A., Rule 25. For the reasons stated below, we dismiss the plaintiffs appeal and deny the defendants’ request for sanctions.
1. The plaintiff filed this civil motor vehicle tort action against the defendants[3] in the Worcester Division of the District Court Department. A three-day jury trial concluded on January 31, 2008 with verdicts for the defendants. After the trial had ended, the jury foreman reported to the trial judge, on the record, that he thought one, or perhaps two, jurors had been biased against the plaintiff. More specifically, he informed the trial judge that on the first day of trial, the only other male juror on the panel had informed him that his mind was already made-up.[4] He added that *205 another juror had stated that the plaintiff “rubbed her the wrong way.”[5] The foreman opined that the two jurors would have influenced deliberations.[6] On February 15, 2008, the plaintiff filed a motion for a new trial on the basis of the foreman’s recorded statement to the judge. Citing Commonwealth v. Fidler, 377 Mass. 192, 199 (1979), Cassamasse v. J.G. Lamotte & Son, Inc., 391 Mass. 315, 317-318 (1984), and Commonwealth v. Royster, 15 Mass. App. Ct. 970, 970-971 (1983), the trial judge denied the motion on February 25, 2008 on the ground that the information disclosed by the foreman involved subjective opinions of the jurors and, therefore, could not be used to impeach the verdict.
“A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the Commonwealth.” Mass. R. Civ. P., Rule 59(a). A motion for a new trial is addressed to the judge’s discretion. See Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 466-467 (2003). “The judge is called on to determine whether the jury made an honest and reasonable judgment in accordance with controlling legal principles; whether its verdict was against the weight of the evidence; or whether the verdict resulted from ‘bias, misapprehension or prejudice.’ Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992), quoting Scannell v. Boston Elev. Ry., 208 Mass. 513, 514 (1911).” Atlantis Int’l Constr. Servs., Inc. v. Sluggo, LLC, No. 06-P-1799, at 4 (Mass. App. Ct. Jan. 29, 2008) (unpublished Rule 1:28 decision). To that end, a judge may consider a juror’s posttrial testimony, whether by way of affidavit, or, as in this case, by an on-therecord interrogation of the juror by the trial judge, for the sole purpose of establishing the existence of an improper influence on the jury. Such testimony cannot be used to show the role that the improper influence played on the jury’s deliberations. Commonwealth v. Fidler, supra at 196. Improper influences would include unauthorized views of sites by jurors, improper communications to the jurors by third persons, and improper con *206 sideration of documents not in evidence. Id. at 197. “Juror testimony concerning the mental processes of jurors during deliberations, such as testimony that the jurors did not follow the judge’s instructions, or that they misunderstood the legal consequences of their verdict, or that they were influenced by matters not in evidence, is not permitted to impeach a verdict.” Cassamasse, supra at 317-318.
We conclude that the trial judge’s determination that “the information disclosed by the foreperson involved subjective opinions of the jurors” and, therefore, “did not rise to the level of information sufficient to impeach the verdict” was legally correct.
2. The defendants contend that they entered into a “high-low” agreement with the plaintiff that provided for her receipt from them of $10,000.00 in the event of a defendants’ verdict and that prohibited either side from filing a posttrial motion for a new trial. In support of their request for sanctions pursuant to Dist./Mun. Cts. R. A. D. A., Rule 25, the defendants argue that the plaintiff has not proceeded in good faith because she filed a motion for a new trial in direct contravention of the parties’ “high-low” agreement, predicated that motion on grounds that clearly involved the jury’s mental processes and that would, thus, not permit the jury’s verdict to be set aside, and then filed this appeal of the denial of that motion. Under Dist./Mun. Cts. R. A. D. A., Rule 25, the Appellate Division may award single or double costs and interest if it determines “that an appeal is frivolous, or that either party has acted in bad faith in proceeding under these rules.” Rule 25 follows Mass. R. A. R, Rule 25, under which an appeal is deemed frivolous “[wjhen the law is well settled, when there can be no reasonable expectation of a reversal.” Avery v. Steele, 414 Mass. 450, 455 (1993), quoting Allen v. Batchelder, 17 Mass. App. Ct. 453, 458 (1984). The imposition of a sanction rests within the sound discretion of the appellate court. Id. However, an appeal should not be deemed to be frivolous and sanctions should not be granted except in egregious cases. Symmons v. O’Keeffe, 419 Mass. 288, 303 (1995). We conclude that the plaintiffs appeal was not frivolous, and decline to impose Rule 25 sanctions.
The plaintiff’s appeal is dismissed. The defendants’ request for sanctions is denied.
So ordered.

 Defendant Kelly Beatty was the driver of the vehicle that struck the plaintiff’s vehicle on November 7, 2004. Beatty was operating within the scope of her employment with defendant Alternatives Unlimited, Inc. at the time of the collision.

 ‘Well, I was almost to my car, and I had just felt I kind — I felt I had to tell somebody. Um, I — I think at least one, maybe two jurors, were biasjed] from the start. At least one after the first day. I mean we were walking to our cars Tuesday afternoon, and on the way to the garage he basically told me he made up his mind, you know. He was talking about all the dental work he had had done, and let this lady pay for her own dental work and, you know. He didn’t want to discuss anything after that.” The foreman also stated that the juror had made it clear that there was no way he was going to — he came out and said there’s no way this lady’s going to get anything. ... He hadn’t heard any — very much.”

 “There was a woman who had, I guess, worked as a stenographer. I think maybe still does. And she had worked with the plaintiff’s lawyer and one of the defendant’s lawyer [s]. And kind of the same thing, but more like [she] didn’t like the plaintiff. That was almost the general feeling. I get — it’s like she rubbed her the wrong way.” In response to the judge’s question as to when the statement was made, the foreman replied: “That would have been — that, I recall, was yesterday.”

 The trial judge asked the foreman if the other jurors had overheard the two jurors in question. The foreman replied: “I would assume they did, well, they would-n’t have heard the conversation between myself and the other male walking because we were, like I said, we were walking alone. But, like I said, he made it clear that this was —basically this case is over, you know. She’s not getting anything if I have anything to do with it or something to that — he used words to that effect. And then the other one, I don’t know if they were paying attention, but if they had been they would have heard her. Because I was at the far end of the table from her end.... These two people have a lot of influence on the others, and I just felt there was a lot of wavering and — until they kind of pushed things.”