NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-645                                              Appeals Court

COMMONWEALTH  vs.  MICHAEL BLANCHARD.

No. 14-P-645.

Norfolk.     October 2, 2015. - November 12, 2015.

Present:  Katzmann, Grainger, & Maldonado, JJ.


Practice, Criminal, Jury and jurors, Deliberation of jury,
     Instructions to jury, Voir dire, Mistrial, Confrontation of
     witnesses, Required finding.  Constitutional Law, Jury,
     Confrontation of witnesses.  Jury and Jurors.  Evidence,
     Expert opinion, Cross-examination.  Witness, Cross-
     examination.  Firearms.  License.



     Indictments found and returned in the Superior Court
Department on April 16, 2010.

     The cases were tried before Elizabeth M. Fahey, J.


     William S. Smith for the defendant.
     Pamela L. Alford, Assistant District Attorney (Gregory P.
Connor, Assistant District Attorney, with her) for the
Commonwealth.


     GRAINGER, J.  The defendant was convicted by a jury in

Superior Court of murder in the second degree, G. L. c. 265,

§ 1, and carrying a firearm without a license, G. L. c. 269,

§ 10(a).[1]  On appeal, he asserts that the trial judge improperly denied his motion for a mistrial, erred in admitting testimony of a substitute medical examiner, erred in preventing his line of questioning on cross-examination, and that there was insufficient evidence to support the firearms conviction.  We set forth the background of the case as it pertains to the issues on appeal.

Background.  After the jury had reached their verdicts, but before they were announced, the prosecutor was informed by a court officer that a white three-ring binder containing the judge's copy of the motions in limine, including documents and photographs excluded from trial and a complete unredacted set of jail telephone call transcripts, had been delivered into the jury deliberations room.[2]  The prosecutor alerted defense counsel and, after reviewing the binder together, they recognized that it was not in evidence.  Outside the presence of the jury, counsel then brought this matter to the attention of the judge. The judge noted that the binder was not intended to be submitted to the jury.  Upon inquiry, it was discovered that the binder

---

[1] The defendant was found not guilty on an indictment charging armed assault with intent to murder.

[2] The binder contained transcripts of conversations between the defendant and his family about the fact that the family had to mortgage their house to pay for defense counsel, conversations about miscarriages the defendant's girl friend had, and about other drug use.

had been inadvertently included with the exhibits brought over to the jury room.  The judge stated to counsel:  "I would be shocked if I don't have to declare a mistrial if [the jury] did review it."

The judge then conducted individual voir dire examinations of each juror about the binder in accordance with Commonwealth v. Mejia, 461 Mass. 384, 393-396 (2012) (Mejia).[3]  Several jurors recalled having looked through the binder during deliberations.  The foreperson thought the binder was not "really material to the discussion of [their] reaching a verdict."  Each juror affirmed the ability to disregard the contents of the binder and reach the verdicts based only on the evidence at trial and the judge's instructions on the law.

The judge did not look at the initial jury verdict slips and impounded them.[4]  She supplied the jury with new verdict slips, and they were instructed to resume deliberations.

---

[3] The judge asked each juror if he or she had seen the binder in question and, if so, to what extent, and if he or she would be able to disregard the contents of the binder when continuing deliberations.  The judge did not inquire about the role of the binder materials in the jury's deliberations to that point.  See  Commonwealth v. Fidler, 377 Mass. 192, 198 (1979) ("[J]uror testimony concerning the existence of extraneous influences does not . . . unduly intrude on jury deliberations").

[4] The Commonwealth subsequently moved that the initial verdict slips be destroyed; the defendant did not oppose the motion, and the judge allowed it.

Discussion. Extraneous information introduced to the jury room. If a judge "determines that the jury may have been exposed during the course of trial to material that 'goes beyond the record and raises a serious question of possible prejudice' [the judge] should conduct a voir dire examination of jurors to ascertain the extent of their exposure to the extraneous material and to assess its prejudicial effect." Mejia, supra at 394, quoting from Commonwealth v. Womack, 457 Mass. 268, 280 (2010). A judge, however, may not receive any evidence "concerning the subjective mental processes of jurors" for this would involve probing the juror's thought processes.[5] Commonwealth v. Fidler, 377 Mass. 192, 196 (1979) (Fidler).

The foreperson's remark that the binder was "not really material" crossed the permissible line from a description of improper influences to an assessment of their impact on the jury deliberations. Had the judge approved the verdicts on that basis we would be confronted with reversible error. However, during her voir dire, and in addition to determining that there had been no prejudice, the judge correctly ascertained the jury's ability to decide the case on properly admitted evidence alone, and ordered the jury to redeliberate without considering

---

[5] As Fidler acknowledges, "We recognize that the line between overt factors and matters resting in a juror's consciousness is not easily drawn, and difficult cases will arise." Id. at 198.

any of the materials in the binder.[6]  "Jurors are presumed to follow a judge's instructions, including instructions to disregard certain testimony."  Commonwealth v. Caldwell, 459 Mass. 271, 278 (2011), quoting from Commonwealth v. Vallejo, 455 Mass. 72, 78 (2009).

We therefore view this case as presenting a somewhat distinct issue from that presented in Fidler and its progeny, which involved inquiries after verdicts had been announced.  By sealing and then discarding whatever partial or final conclusion the jury may have attained at the time the error was unearthed, the judge removed the extraneous influence from consideration.  This record is closely analogous to Commonwealth v. Tennison, 440 Mass. 553 (2003), a case allowing, after deliberations had begun, replacement of a single juror suspected of unauthorized contact with one of the parties.

"We review a judge's ruling that the jury remained impartial and could disregard the extraneous information for an abuse of discretion."  Mejia, supra at 395, quoting from Commonwealth v. Womack, supra at 280-281.[7]  The judge acted

---

[6] The jury's initial verdict slips were sealed and thus invalidated as they were not "given and affirmed orally by the jurors in open court."  Commonwealth v. Tennison, 440 Mass. 553, 561 (2003).

[7] The defendant moved for the transmittal of the binder to this court, asserting it was "relevant and absolutely necessary" to our consideration of this issue.  We treat this motion as a

within her discretion to determine that by instructing the jury "to decide the entire case anew, [s]he eliminated any influence" from the extraneous materials prospectively. Commonwealth v. Tennison, supra at 561.

Admission of testimony of substitute medical examiner. Because the medical examiner who conducted the autopsy was unavailable for trial, a substitute medical examiner testified in his place. "A substitute medical examiner who did not perform the autopsy may offer an opinion on the cause of death, based on his review of an autopsy report by the medical examiner who performed the autopsy and his review of the autopsy photographs . . . [as well as offer] an expert opinion as to the time that would have elapsed between injury and death, the force required to inflict the injury, and the effect that certain types of injuries would have upon a victim." Commonwealth v. Reavis, 465 Mass. 875, 883 (2013). "A substitute medical examiner may not, however, testify to facts in the underlying autopsy report where that report has not been admitted." Ibid.

The record shows that the substitute expert's testimony on the number of gunshot wounds was based on autopsy photographs that were properly authenticated by a witness present at the

claim that the materials were sufficiently prejudicial to render the judge's finding that the jury could disregard them as clear error. We conclude from a review of the binder that it does not support such a claim.

autopsy.  At trial, the substitute medical examiner identified the photographs which showed the entry and exit wounds.  The substitute medical examiner was free to rely on admitted photographs and "to describe what he . . . observe[d] in those photographs."  Commonwealth v. DiPadova, 460 Mass. 424, 438 n.17 (2011).  There was no error in allowing such testimony.

Cross-examination of victim's sister.  During the cross-examination of the victim's sister, the defendant began questioning her about certain cellular telephone text messages she had received from the defendant.  The judge interpreted the defendant's question as asking the witness "what the sender of the message meant" and intervened sua sponte.[8]

To determine whether the defendant's constitutional right to confront witnesses against him has been violated, "we weigh the materiality of the witness's direct testimony and the degree

_____

[8] Defense counsel began the relevant inquiry by quoting from a text message received by the witness:

Defense counsel:  "'-- car.  He did it with my own car. And I don't care if the cops know who killed him.'  What is that in reference to in November of 2009?"
The judge:  "How can she say that?"
Defense counsel:  "Well, because this --"
The judge:  "That's for the jury."
Defense counsel:  "Well, I'm asking her.  It's a text that she received.  And -- and I'm asking --"
The judge:  "You're asking her, in effect, what the sender of that message meant.  And that's not for her to conclude."
Defense counsel:  "Can I ask her if she -- if she knows anything about what's referring to a car?"
The judge:  "You can't ask her what the sender meant."

of the restriction on cross-examination." Commonwealth v. Miles, 420 Mass. 67, 72 (1995). We note that "a witness may testify only to facts that she has observed and may not give an inference or opinion based upon those facts." Olson v. Ela, 8 Mass. App. Ct. 165, 167 (1979).

There is no evidentiary basis to conclude that the witness had personal knowledge about the underlying meaning of the text message. The witness testified that she had limited communications with the defendant in the months prior to receiving the text messages, and stated "I don't really recall what was said during that conversation" when asked about a text sent earlier that same day. "[T]he extent of cross-examination is generally within the control of the trial judge." McElwain v. Capotosto, 332 Mass. 1, 3 (1954). Absent personal knowledge of the witness, the judge did not err in preventing the defendant from further questioning.

Insufficiency of the evidence on the conviction of possession of a firearm without a license. The defendant acknowledges that the Commonwealth does not have the burden to produce evidence of the defendant's lack of gun licensure. See Commonwealth v. Gouse, 461 Mass. 787, 804 (2012). Licensure is an affirmative defense, which the defendant must raise; the Commonwealth only needs to "prove the absence of properly raised affirmative defenses." Ibid., quoting from Commonwealth v.

Cabral, 443 Mass. 171, 178 n.15 (2005).  The defendant made no proffer respecting licensure; the judge properly denied the defendant's motion for a required finding.

Judgments affirmed.