NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12041

COMMONWEALTH  vs.  MICHAEL BLANCHARD.

February 27, 2017.

Practice, Criminal, Jury and jurors, Deliberation of jury,
     Instructions to jury, Voir dire, Mistrial, Confrontation of
     witnesses, Required finding.  Constitutional Law, Jury,
     Confrontation of witnesses.  Jury and Jurors.  Evidence,
     Expert opinion, Cross-examination.  Witness, Cross-
     examination.  Firearms.  License.


     In the early morning hours of March 16, 2010, the
defendant, by his own admission, fired multiple shots into the
window of the apartment where Stephen Erving, Jr., was asleep,
and killed him.  The Commonwealth charged the defendant with
murder in the first degree, armed assault with the intent to
murder, and carrying a firearm without a license.  At trial,
there was an issue whether the defendant's actions were
consistent with manslaughter where he argued that he fired the
shots to scare, not kill, Erving, who purportedly had threatened
the defendant and his family.  The jury ultimately convicted the
defendant of murder in the second degree and carrying a firearm
without a license.  He appealed from the convictions to the
Appeals Court.

     Before the Appeals Court, the defendant argued (among other
claims) that the trial judge improperly denied his motion for a
mistrial on the ground that during the jury's deliberations, the
jurors were exposed to the contents of a binder belonging to the
judge that contained copies of various motions, photographs, and
transcripts, and included materials that had been excluded as

evidence at trial.[1]  The defendant's position was that the
extraneous materials were a factor in the jury's decision to
convict him of murder in the second degree, and that he was
therefore prejudiced by the jurors' unauthorized exposure to
them.  The Appeals Court upheld the judge's denial of the
defendant's motion for a mistrial, rejected his other claims of
error, and affirmed the convictions.  Commonwealth v. Blanchard,
88 Mass. App. Ct. 637 (2016).  We granted the defendant's
application for further appellate review, and affirm the
convictions.

The principal issue before us is whether the jury's
exposure to the judge's binder during deliberations should have
resulted in a mistrial.  Where a jury have been exposed to
extraneous materials, we have differentiated between cases in
which the exposure comes to light before a seated jury have
completed deliberations, and cases where the exposure is
discovered after jurors have already had been discharged.[2]
Compare Commonwealth v. Mejia, 461 Mass. 384, 394 (2012) (still-
deliberating jury inadvertently received exhibit marked for
identification that had been excluded from evidence at trial);
Commonwealth v. Kamara, 422 Mass. 614, 616-617 (1996)
(deliberating juror shared prior knowledge of defendant and
others involved in case during jury's deliberations), with
Commonwealth v. Kincaid, 444 Mass. 381, 384-386 (2005) (after
jury reached verdict and were discharged, information came to
light that jurors had been exposed to evidence of flight of
defendant's coventurer); Commonwealth v. Fidler, 377 Mass. 192,
199-200 (1979) (after verdict and discharge of jury, juror
claimed that deliberating jurors had been exposed to evidence of
defendant's prior involvement in shooting).  Although we have
not yet considered circumstances exactly like those presented by
this case, where the jurors announced they had completed their
deliberations, reached verdicts, and were ready to announce them
in court,[3] we consider these circumstances to be substantively in

---

[1] The judge questioned court personnel and determined that
the binder was inadvertently brought into the jury room during
jury deliberations.

[2] In Commonwealth v. Jackson, 376 Mass. 790, 800-801 (1978),
we established procedures to determine whether a mistrial is
required where the jury have been exposed to extraneous
materials during trial.

[3] The jurors had voted on verdicts with respect to each of
the charges, but had not yet announced their verdicts.  After

keeping with the still-seated jury cases.  In these types of cases, the judge is able immediately to question the deliberating jurors and assess their actual capacity to restart their deliberations and to reach a verdict independently of the extraneous materials.  Compare Kamara, supra at 616 (recognizing that "our review is to be focused on the jury in this case, not on a hypothetical jury"), with Fidler, supra at 201 (where claim of extraneous influence on discharged jury is raised, judge first assesses "the probable effect of the extraneous facts on a hypothetical average jury").

The Kamara and Mejia cases offer illustrations of appropriate procedures for a judge to follow when still-seated jurors are exposed to extraneous materials during their deliberations.  As the judges did in those cases, when such a claim is made, the judge generally should conduct an individual voir dire of each of the deliberating jurors.  See Kamara, 422 Mass. at 617-618.  See also Mejia, 461 Mass. at 395-396.[4]  The purpose of the voir dire is twofold:  to determine the extent of the jury's exposure and the effect of that exposure on the jurors' ability fairly to decide the matter.  Kamara, supra.  As part of the initial inquiry into the extent of the exposure, the judge should ask the juror whether he or she read, saw, heard, or otherwise became aware of the extraneous materials during the jury's deliberations.  The judge should then inquire into the effect of the exposure on the particular juror, with the focus of the question or questions being whether the juror can

_____

consultation with counsel, the judge sealed and impounded the jury's original verdict slips.  Later, she allowed the Commonwealth's unopposed motion to destroy them.

[4] In both the Kamara and the Mejia cases, we referenced the procedures set out in Jackson, 376 Mass. at 800-801, as being appropriate to use in the case of a still-deliberating jury exposed to extraneous material.  See Commonwealth v. Kamara, 422 Mass. 614, 615-616 (1996).  See also Commonwealth v. Mejia, 461 Mass. 384, 395 (2012).  Although it is not always an appropriate procedure, we noted in Jackson that a judge's inquiry to determine whether there was in fact juror exposure to extraneous materials may be done by asking the jury collectively; however, we further noted that "if any juror indicates that he or she has seen or heard the material, there must be individual questioning of that juror, outside of the presence of any other juror, to determine the extent of the juror's exposure to the material and its effects on the juror's ability to render an impartial verdict."  Jackson, supra.

deliberate without being influenced by the materials. In asking about the effect of the extraneous materials on the individual juror, the judge should caution the juror not to speculate about the effect on any other juror or on the jury as a whole.

It bears emphasis that whenever a judge asks individual jurors about the possibility of extraneous influences on jury deliberations -- whether of jurors who are still sitting as such or jurors who have been discharged -- the purpose of the individual voir dire is not to delve into the jury's deliberations. Although the judge should inquire into the extent to which the jury considered the extraneous material, there should not be an inquiry into a juror's individual or the jury's collective thought processes. See Commonwealth v. Moore, 474 Mass. 541, 553 (2016). Of course, there is a possibility during individual voir dire that "a juror [may] respond[] to a permissible question with an answer that inappropriately reveals aspects of the deliberations." Kincaid, 444 Mass. at 391. To minimize the likelihood of this happening, a prefatory instruction by the judge to each juror about the need to avoid telling the judge anything about the substance of the jury's deliberations may be useful. See id. ("Giving cautionary instructions to each juror at the outset of the inquiry and, if necessary, again during the inquiry will reduce the likelihood of answers that stray into revelation of the jury's thought process. The jurors can be instructed to respond about any information that was not mentioned during the trial [appropriate], but not to describe how the jurors used that information or the effect of that information on the thinking of any one or more jurors [inappropriate]").

Once the judge completes the individual juror voir dire, the judge must determine whether juror exposure to extraneous information requires the declaration of a mistrial in order to protect the defendant's right to a fair and impartial trial, or whether a less drastic remedy is appropriate -- e.g., excusing any juror who indicates an inability to decide the case fairly in light of the extraneous information, and replacing the juror with an alternate. See Kamara, 422 Mass. at 618. See also Mejia, 461 Mass. at 395-396. The judge has broad discretion to fashion an appropriate remedy, if one is necessary. See Kamara, supra at 620. It is within the judge's discretion to determine that the jury -- the remaining and alternate jurors -- can fairly decide the matter, even where the jury's deliberations have been partially completed. See Commonwealth v. Tennison, 440 Mass. 553, 557 (2003). In these circumstances, the judge should instruct the jury to give new, fresh, and careful

consideration to the evidence admitted during trial with the extraneous material affirmatively excised from their consideration, and to keep in mind as well all of the instructions previously provided by the judge.[5]

In the present case, the judge adhered to the still-sitting jury procedures followed in the Kamara and Mejia cases, and assessed the extent of the jurors' exposure to the judge's binder.  The record indicates that the judge's questions to each juror appropriately avoided asking about the content of the jury's deliberations or the particular juror's thought process. The defendant points out that some jurors told the judge about the jury's deliberations, including specific discussions about the contents of the judge's binder, and also offered assessments that the materials had little or no effect on their deliberations.[6]  These statements by the jurors were inappropriate and unfortunate responses to properly focused questions by the judge, but the fact that these statements were made did not mean automatically that a mistrial was required. The judge obtained assurances from all of the jurors that they could decide the matter without consideration of the extraneous materials and exclusively on the evidence and the judge's instructions.  Before they resumed their deliberations, the judge instructed the jury accordingly.[7]

---

[5] It is important, however, that the judge make it clear to the jury that they are to begin deliberations completely anew in circumstances where, as a result of the extraneous material, a juror has been excused so that there is a change in the membership of the deliberating jury, with an alternate replacing the discharged juror.

[6] The individual voir dire of the jury's foreperson is an example.  In response to whether she could reach a verdict by disregarding the binder and by considering the evidence and her instructions, the foreperson stated, "Yes.  I think the verdict we did reach was not really -- though [the binder] was seen, I don't think it was really material to the discussion of our reaching a verdict."  On receiving this response, the judge appropriately redirected the foreperson's testimony.

[7] The judge instructed the jury to deliberate based on "the [e]xhibits that were offered in evidence," "the testimony given at . . . trial," and her "instructions . . . on the law," and not on "anything" in the judge's binder.  Although it would have been preferable for the judge to instruct the jury to engage in "new" or "fresh" deliberations rather than to "resume" their old

The defendant contends that this case is more like those in which the jury already had been discharged, because the jury here had voted on their verdicts on all of the charges when the issue of extraneous materials first came to light. See Fidler, 377 Mass. at 201. See also Kincaid, 444 Mass. at 383. As we recognized in Kamara, 444 Mass. at 619, where the jury are still empanelled, "the issue need not be considered in the abstract." Although it was appropriate to consider that the jury had voted on their verdicts, this fact was not in and of itself conclusive of the jurors' capacity to restart deliberations and newly to decide the matter in a fair and impartial manner. Based on our review of the judge's voir dire and findings, and for the reasons discussed above, we conclude that the judge did not abuse her discretion in declining to declare a mistrial, and in handling the unfortunate circumstance presented as she did.

The defendant's remaining claims of error do not require extended discussion. To the extent that he claims that his confrontation rights were violated by the admission of the testimony of a substitute medical examiner, the medical examiner permissibly provided his opinion that Erving died from gunshot wounds to the head based on autopsy photographs that were admitted and authenticated. See Commonwealth v. DiPadova, 460 Mass. 424, 438 n.17 (2011). There is no merit to the defendant's claim that the judge erred in limiting the cross-examination of Erving's sister where she testified that she received the defendant's text messages, but where it was apparent from her testimony that she did not have personal knowledge of the meaning of the messages. See Commonwealth v. Andrews, 403 Mass. 441, 461-462 (1988). Finally, the defendant cannot prevail on his claim that there was insufficient evidence to support the firearm conviction where he did not produce any evidence that he had a license to carry a firearm and, therefore, the burden did not shift to the Commonwealth to prove that he did not have one. See Commonwealth v. Humphries, 465 Mass. 762, 769 (2013), citing Commonwealth v. Gouse, 461 Mass. 787, 806 (2012).

Judgments affirmed.


William S. Smith for the defendant.

---

ones, we think it unlikely that this instruction made a difference in the circumstances of this case, where there had not been a change in the membership of the jury.

<u>Pamela Alford</u>, Assistant District Attorney (<u>Gregory P. Connor</u>, Assistant District Attorney, also present) for the Commonwealth.